## COMMISSIONER OF INTERNAL REVENUE v. BUCK.

No. 212.

Circuit Court of Appeals, Second Circuit.
June 6, 1941.

776

Samuel O. Clark, Jr., Asst. Atty. Gen., and Sewall Key and L. W. Post, Sp. Assts. to Atty. Gen., for petitioner.

Joseph F. McCloy and M. Francis Bravman, both of New York City, for respondent.

Before L. HAND, CHASE, and FRANK, Circuit Judges.

FRANK, Circuit Judge.

In 1932 Ellsworth B. Buck, respondent here, conveyed 10,000 shares of William Wrigley, Jr. Company stock to a bank, as trustee, to pay the income to his wife for life and, on her death, to pay the income and ultimately the principal to his children or their descendants. He retained a power "to alter or amend in any respect whatsoever" the provisions relating to the distribution of the income or principal, except that this power could not be exercised so as to revoke the trust, revest title to the principal in him, or direct that the income be paid to him, accumulated for him, or applied to the payment of insurance premiums on his life. In the event that a beneficiary predeceased him, the share held for that beneficiary was to return to Buck. He also retained the powers to remove the trustee, and to direct the trustee how to exercise its powers to retain or dispose of the corpus and to invest or reinvest the proceeds of a sale, and reserved the right to vote any stock or to direct the trustee how to vote it.

In 1933 and 1934, the disputed years, the net income of the trust, amounting to $29,-400 and $34,300, was paid to respondent's wife. These amounts were deposited by her in a personal bank account, and respondent, although signing as her attorney most of the checks drawn on this account, never used any of the money for his own benefit and never exercised control over her use of it. Mrs. Buck has owned the home in which she and respondent live since 1920, and she has personal property worth in excess of half a million dollars. At all times since their marriage they have shared the family expenses, and part of the income from the trust was used by Mrs. Buck for these expenses. This was not by prearrangement, however; having two other bank accounts, she drew checks for particular expenditures on whichever happened to be most convenient. Buck's income (assuming that the income from the trust was not his) ranged between $75,000 and $140,000, exclusive of losses on investments, which sometimes were in excess of his income.

The petitioner asserted deficiencies for 1933 and 1934 in respondent's income tax, arguing that he was taxable on the income of the trust under either section 22(a) or sections 166 and 167 of the Revenue Acts of 1932 and 1934, 26 U.S.C.A. Int.Rev. Acts, pages 487, 543, 669, 727. Alternatively, the Commissioner argued that a portion of the trust income applied by Mrs. Buck to the payment of premiums on policies of insurance on respondent's life, of which policies she was the beneficiary, was taxable to him under section 167. The Board of Tax Appeals found against the Commissioner, 41 B.T.A. 99, and he brings this petition for review.

A second issue, also found against the petitioner, is whether any portion of a payment received by respondent in 1934 under a life insurance contract is taxable to him. A policy on the life of his father, who died in 1919, provided that respondent would be paid an annuity of $1,000 for 20 years certain and thereafter as long as he should live. The Commissioner sought to tax as income a portion of this amount which did not represent a return of capital.

█ First, we discuss respondent's liability to tax on the trust income under section 22(a). The meaning of that section has been illuminated for us by recent decisions of the Supreme Court; it is that illumination which must guide our steps. We must, accordingly, consider a variety of factors in "drawing the line" between taxability and non-taxability in this field where "differences in degree produce ultimate differences in kind"; Harrison v. Schaffner, 1941, 61 S.Ct. 759, 762, 85 L.Ed. ——, always remembering that "no one fact

is normally decisive but that all considerations and circumstances * * * are relevant to the question of ownership"; Helvering v. Clifford, 1940, 309 U.S. 331, 336, 60 S.Ct. 554, 557, 84 L.Ed. 788. We are admonished, too, that "ownership" is not a term of inflexible meaning, and that what is relevant to "ownership" in determining the niceties of rights or duties under the rules concerning trust estates may need to be disregarded in applying the cruder test of taxability; in the law of trusts the cutting edge of the pertinent rule must be razor-sharp, while in income tax law, involving so sweeping a provision as Section 22(a), the helpful image is rather that of a broad-sword.

We can best approach the instant case by enumerating the significant factors to be considered: That the donees are members of the donor's family, of which he is the head; that he has "income in excess of normal needs"; that, during his life, he is unrestricted as to the disposition of any part of the corpus or income, excepting that he may not divert any portion for his personal use; that, while he lives, he has entire control of the management of the corpus, and, at his pleasure, may remove the trustee and appoint another.

■ Respondent argues, in effect, that the income is non-taxable to him because he has deprived himself of certain of his prior "bundle of rights", i. e. the rights to have the income paid directly to him, to use any of the income or principal for his personal consumption expenditures, and to make a testamentary disposition of the income or corpus. As we read the recent decisions of the Supreme Court, such a diminution of the congeries of rights and privileges called "ownership" is not sufficient to immunize the grantor of a trust from a tax on the income, in a case where, as here (to revert to our enumeration of significant factors), the beneficiaries are members of the donor's family and he has "income in excess of normal needs". In such a case, at any rate, a potent factor which melts off the grantor's insulation from income taxation is the donor's power to dispose of the income, for that power "is the equivalent of ownership of it." Helvering v. Horst, (1940) 311 U.S. 112, 118, 61 S.Ct. 144, 147, 85 L.Ed. ——, 131 A.L.R. 655; Harrison v. Schaffner, supra. Mr. Justice Darling said, many years ago,

in Scintilla Juris, that to make a gift is the essence of selfishness and the most effective way of asserting dominion over property; that remark, stripped of its cynicism, seems to epitomize the views of the Supreme Court in the Horst case; taxable income, said the court, is to be measured by the "satisfactions which are of economic worth" (311 U.S. 112, 117, 61 S. Ct. 144, 147, 85 L.Ed. ——, 131 A.L.R. 655), and chief among them, it held, is the power to make gifts. We understand the Supreme Court to say that, certainly where the family-entente element is present, the elimination of the donor's power to expend the income for satisfactions flowing from his personal consumption does not afford him shelter from the tax.

■ The outstanding fact, which distinguishes this case from Helvering v. Palmer, 2 Cir., 115 F.2d 368 and Blair v. Commissioner, 1937, 300 U.S. 5, 57 S.Ct. 330, 81 L.Ed. 465, is that respondent has reserved to himself during his life, the power, at any time, and from time to time, to "alter or amend in any respect whatsoever," the provisions of the indenture relating to "the disposition of the income and principal of the trust estate or the separate shares into which the same may be divided, and to change any beneficial interest" thereunder. True, he cannot do so in such a way as to "revest in himself title" or "so as to direct that any part of the income * * * be distributed to him or be held or accumulated for future distribution to him." But he has unlimited power, at any moment to reduce or obliterate the share of principal or interest originally allotted to his wife or any child, if for any reason, or for no reason, he decides, in the exercise of his uncontrolled discretion, that any of the beneficiaries is receiving more than seems desirable. Consequently, he has deprived himself merely of (1) the power to dispose by will [1] and (2) the power to use the income or principal for personal consumption purposes. During his life, he has entire control of the sale and investment of the corpus, in whole or in part, and the voting power of any stock now or later constituting that corpus. When to such control there is coupled the power, until his death, freely to sprinkle the income about among any beneficiaries he may select (as if he were playing a hose), it is impossible to con-

---

[1] Or to have the law of intestate succession distribute, should he die, leaving no will.

clude, in the light of the recent decisions of the Supreme Court, that the income is not taxable to him. For here we have the central fact which the Supreme Court emphasized in Helvering v. Clifford, supra: the beneficiaries named in the trust instrument are members of respondent's "intimate family group", there is a "reallocation of income" within that group so that (unless respondent otherwise decides) the "income remains in the family"; and it "is hard to imagine that respondent felt himself the poorer after this trust had been executed or, if he did, that it had any rational foundation in fact." In the Clifford case, the court said that "where the head of the household has income in excess of normal needs, it may well make but little difference to him (except income-tax-wise) where portions of that income are routed —so long as it stays in the family group". Here, in addition, this respondent can, during his life, determine precisely· where, at any moment, the income is to be routed. In apportioning the family budget—and in thus reducing the amounts he may contribute to specific members of his family out of his non-trusteed income—he may take into account what he has decided to be the current destination of the trusteed income. And, while Clifford was under a "disability to make a gift of the corpus to others" than the originally named donee, respondent Buck is under no such constraint; indeed, he may route it outside the family.

The retained "satisfactions which are of economic worth" are so numerous, that Buck, like Clifford, "has rather complete assurance that the trust will not effect any substantial change in his economic position"; while he lives, he has as much to say about the management of the corpus as before he made the trust; neither he nor his acquaintances will observe any important practical difference[2]. His household will run on substantially as before, since the incomes of the members of his family will still be subject to his whims; should any of his family expend what he received in a manner displeasing to Buck, or offend Buck in any way, a few words written by Buck can cut off that beneficiary's portion of the income and, later, a few more can restore it. The direct satisfactions of pater familias are thus virtually undiminished, as are those indirect satisfactions (stemming from the vicarious pleasure of consumption of the income by his wife and children) which the Supreme Court regards as noteworthy indicia of taxability.

█ The one feature of this case which calls for special mention is the fact that the trust is of long duration. But the decisions of the Supreme Court disclose that the dominant fact, in the family group cases, is the extent of the donor's actual control. We conclude that, the control factor is sufficiently present when the trust is of short duration, as in the Clifford case (because the grantor will soon reacquire complete dominion), even if there are no express reservations of control; while, if the trust is of long duration, then the donor is to be regarded as the "owner", if he expressly reserved, as here, a very substantial measure of control of the disposition of the income. See Paul, Revocable Trusts and the Income Tax, in Studies in Federal Taxation, Third Series, 1940, at 224-225.

Other alleged distinguishing factors can be summarily dismissed: In the Clifford case, the donor was himself the trustee; but Helvering v. Richter, 1941, 61 S.Ct. 723, 85 L.Ed. ——, removes that as a significant difference; moreover, respondent Buck can remove the trustee at his pleasure; cf. Hormel v. Helvering, 1941, 61 S.Ct. 719, 85 L.Ed. ——. In the Horst case, supra, title to the corpus was retained by the donor; but there was no such retention in Helvering v. Eubank, 1940, 311 U.S. 122, 61 S.Ct. 149, 85 L.Ed. ——. Knapp v. Hoey, 2 Cir., 1939, 104 F.2d 99, disposes, so far as this court is concerned, of the Commissioner's contentions under Sections 166 and 167, but is of no assistance when construing Section 22 (a); see Helvering v. Clifford,

---

[2] We note, in passing, that Buck had expressly in mind the importance of retaining voting power in a considerable block of stock in conjunction with a small group of persons who, together with him, were the dominant stockhold-ers of the Wrigley company. It has often been observed (in economic treatises, government reports, based up- on extensive investigations, and judicial decisions), that control of such a block yields corporate control from which in turn may flow numerous pecuniary emoluments of substance, to say nothing of more indirect "satisfactions * * * of economic worth" of the sort to which the court referred in the Horst case.

supra, 309 U.S. at 337, 338, 60 S.Ct. 554, 84 L.Ed. 788.[3]

█ It is urged that we may not substitute our judgment for the finding of the Board of Tax Appeals that the trust did not lack substance and that the taxpayer did not retain the beneficial ownership for himself. But to a large extent the Board's decision involved merely "an interpretation of a written document, and this court is free to construe the writing for itself". Midwood Associates, Inc. v. Commissioner, 2 Cir., 1940, 115 F.2d 871, 872. This is not a case where there was before the Board evidence, extrinsic to the instrument, which could lead to a different interpretation; at most, such evidence confirms our interpretation.[4] Cf. Helvering v. Rankin, 1934, 295 U.S. 123, 131, 55 S.Ct. 732, 79 L.Ed. 1343; Powers v. Commissioner, 1941, 312 U.S. 259, 260, 61 S.Ct. 509, 85 L.Ed. ——.

█ The remaining issue is whether any part of the amount paid under the life insurance contract is taxable to respondent. The reasoning of Helvering v. Le Gierse, 1941, 61 S.Ct. 646, 85 L.Ed. ——, construing the estate tax statute, suggests that under the income tax statute as well, only amounts paid because of an insurance— as opposed to an investment—risk should be exempt. But the legislative history of the income tax statute, 26 U.S.C.A. Int. Rev.Code, § 22(b) (1), as outlined in Commissioner v. Winslow, 1 Cir., 113 F.2d 418, indicates that the Congressional intent was not to restrict the exemption in this manner. We, therefore, adhere to our ruling in Commissioner v. Bartlett, 2 Cir., 113 F. 2d 766.

The decision of the Board of Tax Appeals is reversed as to the trust income and affirmed as to the annuity payment.

---

[3] As we have disposed of the case under Section 22 (a), there is no need to consider the Commissioner's contention that Buck is taxable under Section 167 on a portion of the trust income which was in fact applied by his wife to payment of premiums on policies on Buck's life.

[4] There is no need here to consider whether findings of the Board are to be regarded as those of an administrative agency, expert in a particular field; it may be that the Board's findings are to be considered rather in the nature of those of a statutory court with limited jurisdiction and that the expert administrative agency is the Bureau of Internal Revenue or the Treasury Department.