## HELVERING, COMMISSIONER OF INTERNAL REVENUE, *v.* R. DOUGLAS STUART.*

No. 49. Argued October 23, 1942.—Decided November 16, 1942.

* Together with No. 48, *Helvering, Commissioner of Internal Revenue,* v. *John Stuart,* also on writ of certiorari, 316 U. S. 654, to the Circuit Court of Appeals for the Seventh Circuit. Argued October 22 and 23, 1942.

*Assistant Attorney General Clark,* with whom *Solicitor General Fahy* and *Messrs. Sewall Key, L. W. Post,* and *Valentine Brookes* were on the briefs, for petitioner.

*Messrs. Herbert Pope* (in Nos. 48 and 49) and *George I. Haight* (in No. 48) argued the cause, and *Messrs. Benjamin M. Price* and *William D. McKenzie* were with them on the briefs, for respondents.

MR. JUSTICE REED delivered the opinion of the Court.

These petitions for certiorari bring here the liability of each respondent for increased income taxes for the years 1934 and 1935. A deficiency was determined by the Commissioner for each year because of the taxpayers' failure to include in their return income from various trusts previously created by them for the benefit of their children.

The taxpayers are brothers, residents of Illinois. In 1930 John Stuart, the respondent in No. 48, created one trust for each of his three children: Joan, Ellen and John. Later, in 1932, R. Douglas Stuart, the respondent in No. 49, created such trusts for each of his four children: Robert, Anne, Margaret and Harriet. The trusts were much alike. They were made in Illinois and specifically provided that they were to be governed by the laws of that state. The three children of John were all of age

by January 1, 1934. None of the children of Douglas were of age during either of the taxable years.

By the creation of the trusts, each taxpayer transferred to three trustees certain shares of the common stock of the Quaker Oats Company, of which respondents were respectively president and first vice-president. The trustees named in each instrument were the taxpayer-settlor, his wife and his brother. The trusts created by John thus had John, his wife and Douglas as trustees, and those created by Douglas had Douglas, his wife and John as trustees.

The trustees were given the power and authority of "absolute owners" over the handling of the financial details of the respective trusts. They were freed from liability or responsibility except such as were due to actual fraud or willful mismanagement.

In the trusts created by R. Douglas Stuart for his minor children, the trustees were directed to "pay over to [the beneficiary] so much of the net income from the Trust Fund, or shall apply so much of said income for his education, support and maintenance, as to them shall seem advisable, and in such manner as to them shall seem best, and free from control of any guardian, the unexpended portion, if any, of such income to be added to the principal of the Trust Fund. When the said [beneficiary] shall attain the age of twenty-five years, the Trustees shall pay over and deliver to him one-half of the Trust Fund; and they shall pay over to him in reasonable installments the income from the remaining one-half of the Trust Fund until he shall attain the age of thirty years, when they shall pay over and deliver to him the remainder of the Trust Fund."

In the trusts created by John Stuart for his adult children, the directions were that the trustees should for fifteen years "pay over and distribute, in reasonable in-

stallments," to the beneficiaries so much of the net income "as they in their sole discretion shall deem advisable, the undistributed portion of such income to be added to and become a part of the principal of the Trust Fund." After the fifteen years, the entire net income was to be paid to the beneficiary for and during her life.

Each trust provided for the devolution of the corpus to the issue of the beneficiary named in the instrument, and in default of such issue to the issue of the donor, and in default of issue of either to named educational or charitable institutions.

Two paragraphs relating to changes and amendments are important. They were the same in all the instruments and read as follows:

"Eighth. The Donor reserves and shall have the right at any time and from time to time to direct the Trustees to sell the whole of the Trust Fund, or any part thereof, and to reinvest the proceeds in such other property as the Donor shall direct. The Donor further reserves and shall have the right at any time and from time to time to withdraw and take over to himself the whole or any part of the Trust Fund upon first transferring and delivering to the Trustees other property satisfactory to them of a market value at least equal to that of the property so withdrawn.

"Ninth. During the life of the Donor, the said [wife and brother of the donor], or the survivor of them, shall have full power and authority, by an instrument in writing signed and delivered by them or by the survivor of them to the Trustees, to alter, change or amend this Indenture at any time and from time to time by changing the beneficiary hereunder, or by changing the time when the Trust Fund, or any part thereof, or the income, is to be distributed, or by changing the Trustees, or in any other respect."

Pursuant to the authority of paragraph ninth, the two trustees authorized in the trusts to make changes did provide on the 2d and 3d of August, 1935, respectively, for the cancellation and expunction of both the eighth and ninth paragraphs, set out above, and for the substitution of the following in lieu of the expunged ninth paragraph:

"Ninth. This Indenture and all of the provisions thereof are irrevocable and not subject to alteration, change or amendment."

The Commissioner does not claim that any trust income received after these amendments is attributable to the taxpayers.

In answer to the taxpayer's petition in No. 49 for the redetermination of the deficiencies, the Commissioner asserted the increase was required by the provisions of §§ 22, 166, and 167 of the Revenue Act of 1934, 48 Stat. 680. Section 22 was not raised by the Commissioner in his answer to the petition in No. 48. But the applicability of that section was raised by the Commissioner as appellee before the Circuit Court of Appeals (*Helvering* v. *Gowran,* 302 U. S. 238, 245). The contention in the Court of Appeals rested on the facts stipulated in the Board of Tax Appeals. On the rejection of that ground in the court below, the Commissioner was entitled to raise the question, as he did, in his petition for certiorari and rely on § 22 in this Court. *Helvering* v. *Gowran, ibid,* 246; cf. *Hormel* v. *Helvering,* 312 U. S. 552. So far as pertinent the sections are set out in the footnote below.*

---

* Text of statutes, *id.,* 686, 729.

"Sec. 22. Gross Income.

(a) *General Definition.*—'Gross income' includes gains, profits, and income derived from salaries, wages, or compensation for personal service, of whatever kind and in whatever form paid, or from professions, vocations, trades, businesses, commerce, or sales, or dealings in

The Board of Tax Appeals upheld the Commissioner's determinations that § 166 governed the trusts' incomes because the powers of the wife and brother, as trustees, under the ninth paragraph were sufficient to revest the funds in the grantors and because the trustees were without substantial adverse interests. The Circuit Court of Appeals reversed this determination, *Stuart* v. *Commissioner,* 124 F. 2d 772, on its conclusion that under the law of Illinois "the wife and brother as trustees had no authority . . . to revest the property in the grantor." The same reasoning led the appellate court to say that neither § 167 nor § 22 was applicable, except as to the income of the Douglas Stuart trusts actually used for the support of a minor child.

---

property, whether real or personal, growing out of the ownership or use of or interest in such property; also from interest, rent, dividends, securities, or the transaction of any business carried on for gain or profit, or gains or profits and income derived from any source whatever. . . .

"SEC. 166. REVOCABLE TRUSTS.

Where at any time the power to revest in the grantor title to any part of the corpus of the trust is vested—

(2) in any person not having a substantial adverse interest in the disposition of such part of the corpus or the income therefrom, then the income of such part of the trust shall be included in computing the net income of the grantor.

"SEC. 167. INCOME FOR BENEFIT OF GRANTOR.

(a) Where any part of the income of a trust—

(2) may, in the discretion of the grantor or of any person not having a substantial adverse interest in the disposition of such part of the income, be distributed to the grantor;

then such part of the income of the trust shall be included in computing the net income of the grantor."

The applications for certiorari were granted because of differing views in the courts of appeals as to the inclusion of the incomes of trusts with similar provisions in the gross incomes of the donors by virtue of the sections of the Act relied upon by the Commissioner. *Altmaier* v. *Commissioner*, 116 F. 2d 162; *Fulham* v. *Commissioner*, 110 F. 2d 916; *Whiteley* v. *Commissioner*, 120 F. 2d 782; *Commissioner* v. *Buck,* 120 F. 2d 775.

To reach a decision as to the applicability of §§ 166 and 167 of the Revenue Act of 1934 (see footnote, p. 159, *supra*) to these trusts, the instruments must be construed to determine whether the power to revest title to any part of the corpora in the grantors, or to distribute to them any of the income, lies with any persons not having a substantial adverse interest to the grantors. That construction must be made in the light of rules of law for the interpretation of such documents. The intention of Congress controls what law, federal or state, is to be applied. *Burnet* v. *Harmel,* 287 U. S. 103, 110; *Lyeth* v. *Hoey,* 305 U. S. 188, 194. Since the federal revenue laws are designed for a national scheme of taxation, their provisions are not to be deemed subject to state law "unless the language or necessary implication of the section involved" so requires. *United States* v. *Pelzer,* 312 U. S. 399, 402–3. This decision applied federal definition to determine whether an interest in property was called a "future interest." When Congress fixes a tax on the possibility of the revesting of property or the distribution of income, the "necessary implication," we think, is that the possibility is to be determined by the state law. Grantees under deeds, wills and trusts, alike, take according to the rule of the state law. The power to transfer or distribute assets of a trust is essentially a matter of local law. *Blair* v. *Commissioner,* 300 U. S. 5, 9; *Freuler* v. *Helvering,* 291

U. S. 35, 43–45.[1]  Congress has selected an event, that is the receipt or distributions of trust funds by or to a grantor, normally brought about by local law, and has directed a tax to be levied if that event may occur. Whether that event may or may not occur depends upon the interpretation placed upon the terms of the instrument by state law. Once rights are obtained by local law, whatever they may be called, these rights are subject to the federal definition of taxability. Recently in dealing with the estate tax levied upon the value of property passing under a general power, we said that "state law creates legal interests and rights. The federal revenue acts designate what interests or rights, so created, shall be taxed." *Morgan* v. *Commissioner,* 309 U. S. 78, 80 (a case dealing with the taxability at death of property passing under a general power of appointment). In this case, as in *Lyeth* v. *Hoey,*[2] we were determining what interests or rights should be taxed, not what interests or rights had been created, and therefore applied the federal rule. Cf. *Burnet* v. *Harmel,* 287 U. S. 103, 110; *Palmer* v. *Bender,* 287 U. S. 551, 555; *Heiner* v. *Mellon,* 304 U. S. 271, 279; *Helvering* v. *Fuller,* 310 U. S. 69, 74. In this view the rules of law to be applied are those of Illinois. That state is the residence of the parties, the place of execution of the instrument, as well as the jurisdiction chosen by the parties to govern the instrument.

This was the view of the Circuit Court of Appeals. 124 F. 2d 772, 778. Their examination of the Illinois law

---

[1] The incorporation of local law in federal tax acts has been repeatedly recognized. Cf. *Crooks* v. *Harrelson,* 282 U. S. 55 (Missouri real property excluded from federal estate tax because of state rule of law); *Poe* v. *Seaborn,* 282 U. S. 101 (community property laws); *Uterhart* v. *United States,* 240 U. S. 598, 603 (local law of wills).

[2] 305 U. S. 188, 193, 194 (exemption from income tax of funds received by an heir in compromise of litigation over a will as an inheritance, a result contrary to the law of the state of probate).

led them to conclude that "the wife and brother as trustees had no authority under the Illinois law to revest the property in the grantor," a requirement for liability under § 166. This conclusion does not spring from a statute of that state nor even from a clear or satisfying line of decisions. It is, however, the reasoned judgment of the circuit which includes Illinois in which a judge of long experience in the jurisprudence of that state participated. Without a definite conviction of error in the conclusion, this Court will not reverse that judgment. *MacGregor* v. *State Mutual Life Assurance Co.,* 315 U. S. 280. Cf. *Reitz* v. *Mealey,* 314 U. S. 33, p. 39; *Railroad Comm'n* v. *Pullman Co.,* 312 U. S. 496, 499.

The Government does not challenge the conclusion of the Court of Appeals that Illinois law controls. It sharply differs as to the meaning of paragraph ninth, construed generally, and as to the Illinois rule, but does not urge that a federal rule of interpretation applies.

The suggestion is made that *Helvering* v. *Fitch,* 309 U. S. 149, 156; *Helvering* v. *Fuller,* 310 U. S. 69; *Helvering* v. *Leonard, id.* 80; and *Pearce* v. *Commissioner,* 315 U. S. 543, require determination by this Court of the Illinois law. In each of these cases, after courts of appeals had given their opinion of the law of the respective states on the power of the state courts to alter or revise property settlements in judgments of divorce, we reviewed the state decisions to determine whether the husband or wife was taxable under the federal tax system upon the income from the settlements. This depended upon whether the husband could show clearly and convincingly under the state law that the settlement income was not received by the wife pursuant to his continuing obligation to support or whether the wife could raise doubts and uncertainties as to the proper conclusion. *Pearce* v. *Commissioner, supra,* 547.

It is true we examined the state cases to determine the applicable state law, but we did it for the purpose of determining whether the taxpayers had met their burden of proving the Commissioner of Internal Revenue wrong in assessing deficiencies against them. We could do the same here but we are satisfied that the finding of the Court of Appeals on Illinois law is a determination that meets that burden. A requirement of a demonstration of state law, "clearly and convincingly," may well necessitate a review of the conclusion of the Court of Appeals, while a requirement of a finding, as here, of the ultimate fact as to the law would not. If reasonably avoidable we should certainly avoid becoming a Court of first instance for the determination of the varied rules of local law prevailing in the forty-eight states. Nor do we see any reason why we should prefer the view of the Board of Tax Appeals concerning Illinois law to that of the Circuit Court of Appeals within which Illinois is embraced.

One cannot say that it would be an arbitrary or unreasonable or even an unlikely holding on the part of the courts of Illinois to conclude that, under the terms of these trusts, equity ought to and would prevent the wife and brother of the donor, claiming authority under the provisions of paragraph nine of the indenture, from vesting the property in themselves or in the donor or in others for the benefit of themselves or the donor, to the detriment of the present beneficiaries. To support this construction, the Court of Appeals cites *Frank* v. *Frank,* 305 Ill. 181, 187, 137 N. E. 151, 152. In that case there was a deed for a life estate in realty with vested remainder to others, with "full power and authority" to the life tenant to sell the premises by her sole deed. The life tenant sold the fee for life support, a consideration necessarily usable by the life tenant alone. The power was construed as applicable to the life estate alone and its use unauthorized

for the fee. In *Rock Island Bank* v. *Rhoads*, 353 Ill. 131, 142, 187 N. E. 139, 141, the Supreme Court of that state construed the authority of a life tenant to use and dispose of the property as may "in her judgment be necessary for her comfort and satisfaction in life" to stop short of permitting her to add any of the life estate property to build up her own separate estate. For the authority of courts of equity in Illinois over trustees, there are cited cases establishing their general power to require action in accordance with the intent of the donor. *Maguire* v. *City of Macomb*, 293 Ill. 441, 453, 127 N. E. 682; *Jones* v. *Jones*, 124 Ill. 254, 262, 264, 15 N. E. 751; *Welch* v. *Caldwell*, 226 Ill. 488, 495, 498, 80 N. E. 1014.

The Commissioner cites no Illinois cases which bring us to a conviction of error on the part of the Court of Appeals. *People* v. *Kaiser*, 306 Ill. 313, 137 N. E. 826, goes no further than to say a residuary estate bequeathed to a trustee for gifts to such charitable institutions or needy persons as the trustee deems deserving will be enforced by the courts. It also seems that in Illinois a general power of appointment is exercisable in favor of the donee or his creditors. *Id.*, 317; *Gilman* v. *Bell*, 99 Ill. 144, 149; *Botzum* v. *Havana National Bank*, 367 Ill. 539, 543, 12 N. E. 2d 203. But evidently the Court of Appeals does not consider that these trustees under Illinois law have the power to vest this property in themselves. Such a result follows from their view that the property could not be vested in the grantors. Consequently, this power of the trustees is not a general power but a power in trust exercisable as fiduciaries to carry out the purposes of the trust. We therefore do not need to decide whether if they could vest the property in themselves they would have an interest adverse to the grantor. Without that power their interest certainly is not adverse. Cf. *Reinecke* v. *Smith*, 289 U. S. 172, 174.

The real issue is whether, under Illinois law, the trustees' authority under paragraph nine of the trust instruments "to alter, change or amend this Indenture at any time and from time to time by changing the beneficiary hereunder . . . or in any other respect," goes so far as to permit the substitution of the donor for the beneficiaries. Would the trustees with authority to change the terms and "the time when the Trust Fund . . . is to be distributed" be permitted to revoke the trust and thus vest the corpus in the donor. These questions are answered in the negative by the Court of Appeals and we accept that conclusion. These trusts, therefore, stand as though an Illinois statute or a provision of the instruments forbade assignments of any of the corpora or of the income to the grantors except as may be specifically provided by their terms. The exception is of importance in examining the trusts' provisions for the minor children of Douglas Stuart.

On the assumption that the Illinois law forbids the vesting of the trust res in the taxpayers under § 166, it would also be impossible for the trustees to accumulate the income for or to distribute it to the grantor directly so as to come within § 167. 124 F. 2d 772, 778. Consequently, the contention that the donors are taxable, as direct beneficiaries, because of the provisions of § 167 alone, must fail. Could it be, however, that the donors were taxable under § 167 because the trustees could change the beneficiaries of the trusts to the creditors of the donors or to any other person and thereby relieve the donor of a legal obligation? Assuming that such a change would result in a distribution to the grantor under § 167 and *Douglas* v. *Willcuts,* 296 U. S. 1, the ruling of the Court of Appeals on Illinois law forbids such a distribution from these trusts. A decision that a donor cannot take from a trust under state law certainly prohibits a change of the instrument so as to relieve the donor of legal obligations.

The Commissioner, however, raised in the Court of Appeals and has pressed here the liability of the donors for taxation under 22 (a), see footnote, p. 159, on the ground that the trust incomes are chargeable to the donors under the rule of *Helvering* v. *Clifford,* 309 U. S. 331. That is, whether after the establishment of the trust the grantor may still be treated as the owner of the corpus and therefore taxable on its income. It is obvious that if each of the trust incomes is attributable to the donors under this rule, they become a part of the present taxpayers' income under § 167 (a) (1) and (2) also. This leads us to consider both § 22 (a) and § 167, and their interplay on one another, together.

Section 167 took its present form in the Revenue Act of 1932. It was enacted especially to prevent avoidance of surtax by the trust device, when the income really remained in substance at the disposal of the settlor. S. Rep. No. 665, 72d Cong., 1st Sess., pp. 34-35. It is to be interpreted in the light of its purpose for the protection of the federal revenue. *United States* v. *Hodson,* 10 Wall. 395, 406; *United States* v. *Pelzer,* 312 U. S. 399, 403. Of course, where the settlor or donor is not actually or in substance a present or possible beneficiary of the trust, he escapes the surtax by a gift in trust. Revenue Act of 1934, §§ 161 to 168, Supplement E, 48 Stat. 727. Cf. *Helvering* v. *Fuller,* 310 U. S. 69, 74. In the absence of a legislative rule, we have left to the process of repeated adjudications the line between "gifts of income-producing property and gifts of income from property of which the donor remains the owner, for all substantial and practical purposes." *Harrison* v. *Schaffner,* 312 U. S. 579, 583.

In the John Stuart trusts, the trustees, in their discretion, were to distribute income to the named beneficiaries for fifteen years and thereafter to distribute the entire net income. In the Douglas Stuart trusts, the directions authorized discretionary distribution to the beneficiaries

or its application to their education, support and maintenance until the children reached the age of twenty-five years. Undistributed portions of the income were to be added to the corpus. Plainly, these distributions or accumulations were to be used for the economic advantage of the children of the settlors and to the amount of these distributions and accumulations would satisfy the normal desire of a parent to make gifts to his children. Is this alone sufficient to make the income of the trusts taxable to the settlors?

Disregarding for the moment the minority of some of the beneficiaries, we think not. So broad a basis would tax to a father the income of a simple trust with a disinterested trustee for the benefit of his adult child. No act of Congress manifests such an intention. Economic gain realized or realizable by the taxpayer is necessary to produce a taxable income under our statutory scheme. That gain need not be collected by the taxpayer. He may give away the right to receive it, as was done in *Helvering* v. *Horst,* 311 U. S. 112, *Helvering* v. *Eubank,* 311 U. S. 122, 125, and *Harrison* v. *Schaffner,* 312 U. S. 579. But the donor nevertheless had the "use [realization] of his economic gain." 311 U. S. at 117. In none of the cases had the taxpayer really disposed of the res which produced the income. In *Corliss* v. *Bowers,* 281 U. S. 376, he had disposed of the res but with a power to revoke at any moment. This right to realize income by revocation at the settlor's option overcame the technical disposition. The "non-material satisfactions" (gifts-contributions) of a donor are not taxable as income. *Helvering* v. *Horst. supra.*

That economic gain for the taxable year, as distinguished from the non-material satisfactions, may be obtained through a control of a trust so complete that it must be said the taxpayer is the owner of its income. So

it was in *Helvering* v. *Clifford,* 309 U. S. 331, 335, 336. Cf. *Helvering* v. *Fuller,* 310 U. S. 69, 72 note 1, 76. Section 22 (a), we have said, indicated the intention of Congress to use its constitutional powers of income taxation to their "full measure." *Helvering* v. *Clifford,* 309 U. S. 331, 334; *Helvering* v. *Midland Life Ins. Co.,* 300 U. S. 216, 223; *Douglas* v. *Willcuts,* 296 U. S. 1, 9; *Irwin* v. *Gavit,* 268 U. S. 161, 166. Control of the stocks of the company of which the grantors were executives may have determined the manner of creating the trusts. Paragraph eight permits recapture of the stocks from the trust by payment of their value. (See p. 158, *ante.*) Family relationship evidently played a part in the selection of the trustees. On the other hand, broad powers of management in trustees, even though without adverse interest, point to complete divestment of control, as does the impossibility of reversion to the grantors.[3] The interlocking trustees were not appointed simultaneously. The triers of fact have made no finding upon this point. Cf. *Helvering* v. *Clifford, supra,* 336, 338. When the Board of Tax Appeals decided these cases under § 166 it was not necessary for it to reach a conclusion on 22 (a) or its effect upon § 167. That should be done in No. 48, the John Stuart trusts.

In No. 49, the R. Douglas Stuart trusts, the minority of each of the beneficiaries brings the income from the trusts under the provisions of 167 (a) (1) and (2). The grantor owes to each the parental obligation of support. The Court of Appeals assumed that all income expended was used for such a purpose unless the taxpayer showed to the contrary. So far as the income was used to dis-

---

[3] Cf. *Helvering* v. *Clifford, supra; Suhr* v. *Commissioner,* 126 F. 2d 283; *Whiteley* v. *Commissioner,* 120 F. 2d 782; *Commissioner* v. *Buck,* 120 F. 2d 775; *Fulham* v. *Commissioner,* 110 F. 2d 916.

charge this obligation, the sums expended were properly added to the taxpayer's income.[4]

As indicated in the cases of the Board of Tax Appeals cited in the immediately preceding note, the Board has restricted the tax liability of a grantor of a trust for the support and maintenance of an infant and other purposes to such sums as, actually or by presumption, have been expended to relieve the settlor of his obligations. The Board has not taxed the whole of such income to the taxpayer merely because a part could have been but was not used for the support of an infant. We take a contrary view. Among these involved problems of statutory construction, we observe the time-tried admonition of restricting the scope of our decision to the circumstances before us. We are not here appraising the application of § 167 to cases where a wife is the trustee or beneficiary of the funds which may be used for the family benefit. Cf. *Suhr* v. *Commissioner*, 126 F. 2d 283, 285, with *Altmaier* v. *Commissioner*, 116 F. 2d 162, and *Fulham* v. *Commissioner*, 110 F. 2d 916. We are dealing with a trust for minors where the trustees, without any interest adverse to the grantor, have authority to devote so much of the net income as "to them shall seem advisable" to the "education, support and maintenance" of the minor. The applicable statute says, "Where any part of the income . . . may . . . be distributed to the grantor . . . then such part . . . shall be included in computing the net income of the grantor." Under such a provision the possibility of the use of the income to relieve the grantor, pro tanto,

---

[4] *Douglas* v. *Willcuts*, 296 U. S. 1; *Commissioner* v. *Grosvenor*, 85 F. 2d 2; Black *v.* Commissioner, 36 B. T. A. 346; Tiernan *v.* Commissioner, 37 B. T. A. 1048, 1054; Pyeatt *v.* Commissioner, 39 B. T. A. 774, 780; Chandler *v.* Commissioner, 41 B. T. A. 165, 178; Wolcott *v.* Commissioner, 42 B. T. A. 1151, 1157.

See also General Counsel's Memorandum 18972, 1937–2 Cum. Bull. 231, 233.

of his parental obligation is sufficient to bring the entire income of these trusts for minors within the rule of attribution laid down in *Douglas* v. *Willcuts*.

No. 48 is reversed and remanded to the Circuit Court of Appeals for remand to the Board of Tax Appeals.

No. 49 is reversed and, for the reasons herein stated, the decision of the Board of Tax Appeals is affirmed.

*No. 48 reversed.*
*No. 49 reversed.*

MR. CHIEF JUSTICE STONE:

I think judgment should go for the Government in each case.

Assuming, as the opinion of the Court declares, that we must look to Illinois law to determine whether the trustees were free to distribute to respondents the trust income which the Commissioner has taxed under § 167 of the Revenue Act of 1934, still I think respondents have failed to carry the burden which rests on them to show that the Illinois law prevents such distribution. The power conferred on the trustees to dispose of future income was without restriction. They were in terms authorized at any time to alter the trust instrument so as to change the beneficiary, to change the time when the trust fund or any part of it or the income was to be distributed, or to change it "in any other respect." On its face each trust gave to the trustees other than the settlor plenary power to bestow undistributed income on any person they might choose as beneficiaries, including the settlor.

We are cited to no decision in the Illinois courts which either holds or suggests that a power in trust so broadly phrased may not be exercised for the benefit of its donor. Even the generally accepted rule that the donee of a power in trust may not use it for his own benefit, which Illinois does not appear to follow, would hardly support the conclusion that he could not exercise it for the benefit of the

donor. *Reinecke* v. *Smith,* 289 U. S. 172, 176. We are without even a speculative basis in judicial authority or in reason for predicting that the Supreme Court of Illinois would forbid such an exercise of the power.

When state law has not been authoritatively declared we pay great deference to the reasoned opinion of circuit courts of appeals, whose duty it is to ascertain from all available data what the highest court of the state will probably hold the state law to be. *Wichita Royalty Co.* v. *City Bank,* 306 U. S. 103; *West* v. *A. T. & T. Co.,* 311 U. S. 223. But we have not wholly abdicated our function of reviewing such determinations of state law, merely because courts of appeals have made them.

Here our task is the easier because of the salutary rule that he who assails a deficiency assessment before the Board of Tax Appeals assumes the burden of showing, in point of law as well as of fact, that the tax is unlawfully assessed. *Helvering* v. *Fitch,* 309 U. S. 149. The terms of the trust instruments bring them so plainly within the provisions of the taxing statute as concededly to subject respondents to the tax unless we are able to conclude that some law of Illinois denies effect to their words. Respondents suggest no reason for such a rule of law which has ever been advanced in judicial opinion, treatise or elsewhere, and they point to no decision of the Illinois courts recognizing its existence. I am unable to conclude that it does exist and consequently that the tax was not properly laid.

The Board of Tax Appeals found that the trust instruments meant what they said and that in the family circle involved they would be carried out according to their meaning. It was hardly excessive skepticism on the Board's part to conclude that Illinois law would not prevent compliance with the expressed intention. Its judgment ought not lightly to be disregarded.

Mr. Justice Black and Mr. Justice Douglas join in this opinion.