## MILLER v. COMMISSIONER OF INTERNAL REVENUE.

### No. 9838.

Circuit Court of Appeals, Sixth Circuit.

Feb. 13, 1945.

Walter M. Shohl, of Cincinnati, Ohio (Dinsmore, Shohl, Sawyer & Dinsmore, of Cincinnati, Ohio, on the brief), for petitioner.

Helen Goodner, of Washington, D. C. (Samuel O. Clark, Jr., Sewall Key, Helen R. Carloss, and Hilbert P. Zarky, all of Washington, D. C., on the brief), for respondent.

Before HICKS, HAMILTON, and McALLISTER, Circuit Judges.

HICKS, Circuit Judge.

Petition by Benjamin F. Miller to review a decision of the Tax Court affirming the action of the Commissioner of Internal Revenue in assessing on redetermination a deficiency in income taxes of $652.02, $5,-184.57, $4,638.61 and $9487.44 for the years 1937, 1938, 1939 and 1940, respectively.

The Commissioner contended, and the Tax Court held, that petitioner was taxable under Section 22(a)[1] of the Revenue Acts

[1] "Sec. 22. Gross Income. (a) General Definition. 'Gross income' includes gains, profits, and income derived from salaries, wages, or compensation for personal service, of whatever kind and in whatever form paid, or from professions, vocations, trades, businesses, commerce, or sales, or dealings in property, whether real

of 1936 and 1938, on the net income of three separate trusts created by him in 1937 for the benefit of his three sons. In the alternative the Commissioner contended that the income of the three trusts was includable in petitioner's income under Section 167(a) (1) of those Acts but the Tax Court did not pass upon that question. The petitioner contends that the income of the trusts was taxable thereto under Sections 161, 162 and 163 of the Internal Revenue Code, 26 U.S.C.A.Int.Rev.Code, §§ 161–163.

When the trusts were created Sept. 28, 1937, the beneficiaries were 21, 17 and 15 years of age, respectively. The trust indentures were identical except that a different son was named beneficiary in each. We consider therefore the terms of the trust for the benefit of Benjamin F. Miller, the oldest of the three.

Petitioner, called the "Donor" in the trust instrument, designated himself "Trustee," with certain alternatives, immaterial here, in the event he should cease to act by reason of death or otherwise. The Donor was not required to execute bond as Trustee but successor trustees were so required to protect the trust estate. The income was to accumulate during the life of the beneficiary, or until he reached his fortieth birthday, unless "within the sole discretion of the trustee" it was considered expedient and advisable to distribute a part or all of it prior thereto. When the beneficiary reached his fortieth birthday, the entire principal of the trust was to be distributed to him, unless the Donor be alive, "in which event the trust shall continue at the discretion of the Donor." If the cestui died with lawful issue before his fortieth birthday, the trustee in his sole discretion was empowered to accumulate or pay out or credit to such issue the remaining income of the trust until the issue reached thirty years of age. If the cestui died without issue, there were clauses providing for the transfer of the principal and accumulations to the other two cestuis. If all three brothers died before the trusts terminated, leaving no lawful issue, "then such trust estate shall revert to the estate of the Donor." Each trust estate originally consisted of 150 shares of the common stock of the Equity Investment Company, worth approximately $16,500, and their aggregate value equalled ten to fifteen percent of the Donor's net worth.

The Trustee was given power to determine all questions, such as whether any moneys, securities, properties, stock dividends, rights or other things, were to be treated as capital or income, and how the expenses of administration should be borne as between capital and income.

The Trustee was given full voting power with respect to any securities held under the trust and the power to consent to the reorganization or consolidation of any corporation, or to the sale to any corporation or person of the property of any corporation, any of the stocks, bonds, notes, evidences or other property which might be held by the trust, and to do any act with reference to such assets necessary or proper to enable the trust to obtain the benefit of any such reorganization, consolidation or sale. Moreover, the Trustee was empowered to exercise any option contained in such securities and make such conversions and subscriptions and necessary payments to convert them into other securities, and thereafter to hold, manage and dispose of such stocks, bonds and other securities so acquired as a whole or part of the trust fund. He was also given broad powers to meet any tax assessment against the trust fund or trustee out of the principal or income of the trust. It was also provided, "the Trustee shall have full power to manage and control the property of said trust, with full power to retain, sell, assign, transfer, exchange or otherwise dispose of or deal with all or any part of said property as though the absolute owner thereof, without obligation to any one dealing with the Trustee as to the application of the proceeds therefrom * * * with full power to invest and reinvest said trust property without restriction as to the character of the investment, to convert personalty into real estate and real estate into personalty, with power to convey, lease, mortgage, improve or otherwise deal with any real estate as though the absolute owner thereof; with power to compromise, adjust and settle all claims with respect to the trust property; to borrow money for said trust as the Trustee may deem it advisable; to use such means and methods as the Trustee may choose to collect, receive and recover any

or personal, growing out of the ownership or use of or interest in such property; also from interest, rent, dividends, securities, or the transaction of any business carried on for gain or profit, or gains or profits and income derived from any source whatever. * * * 26 U.S.C.A. Int.Rev.Acts, pages 825, 1008."

part or all of the trust property and the rents, issues, income and profits therefrom."

The Trustee had discretionary power at all times to determine as to each beneficiary the time or times and amount of income to be paid or distributed to each from the income from the trust property of each beneficiary, and in case of an emergency with respect to a beneficiary the Trustee shall be empowered "to make such distribution of principal as he may determine advisable."

Section 3 of the trust provided that the trust was terminable at any time during the life of the Donor by mutual agreement of the Trustee and the beneficiary and the undistributed portion of the property of the trust estate should be then distributed to the beneficiary.

Section 4 provided that if the beneficiary be a minor at the time of any distribution the Trustee had the power without the appointment of any guardian for said minor to distribute income or property to the minor or to use the same for his benefit without the intervention of any guardian or court or other person but the Trustee might in his discretion require the appointment of a guardian.

There was a "spendthrift" clause against the alienation of the principal or income of the trust by the beneficiary and if such alienation was made, the trust was to cease, although the Trustee might in his discretion continue to use the income of the trust for the benefit of the beneficiary or his dependents.

The Donor reserved the right to add to the list of securities and other property in the trust fund and such additional property was subject to the terms and conditions of the trust.

The Donor, the only witness, was a lawyer 58 years old, residing and practicing at Columbus, Ohio. He testified that his wife had property and a substantial income of her own and that he executed the trusts because he wanted to give his boys an object lesson of the value of accumulation and that he wanted them to have some initiative and ambition of their own. He further testified that during the life of the trusts the Equity Investment Company, stock of which originally made up the corpora of the trusts, was consolidated with the Capital Loan & Savings Company into a corporation called Capital Finance Corporation, with the result that each trust then possessed 3,109.5 shares of the Capital Finance Corporation. After the consolidation the new corporation had 805 stockholders and 335,000 shares, of which the Donor owned 9,100 shares individually and the three trusts a total of some 9,300 shares.

In 1937, Donor's father gave each trust 80 shares of common and 40 shares of preferred stock of the Capital Finance Corporation. Between 1937 and 1940 earnings of the trust were invested in preferred stock of that corporation and in notes and stocks of other companies.

Donor testified that he had been attorney for the Equity Investment Corporation since 1924 and became attorney and secretary for the Capital Investment Corporation upon its organization. He received a salary for his services as attorney but was uncompensated for his work as secretary. No stock ownership was required for his employment in either capacity.

He testified that in the years 1937 to 1940 the value of these trusts increased approximately $22,000 and that the only distributions were for the benefit of his oldest son's education in the approximate amount of $1,800. He further testified that he constituted himself Trustee because he thought he was better fitted for the execution of the trusts.

The Tax Court was not confronted with conflicts in the evidence. It was confined to the consideration of the testimony of petitioner and the provisions of the trust instruments. From this factual basis it drew the inference that petitioner remained in control of the trust property, was in substance the owner thereof, retained the possibility of direct and indirect benefits from the income and concluded that "all petitioner surrendered was the right to personally use the trust corpora" and decided that he was taxable under Section 22(a) upon the income derived therefrom.

█ Our duty is to determine whether the decision of the Tax Court was in accordance with law. Internal Revenue Code, § 1141(c) (1), 26 U.S.C.A.Int.Rev. Code, § 1141(c) (1). To be more specific, our duty is to determine whether the inferences drawn by the Tax Court have a substantial basis. In Walker v. Commissioner of Internal Revenue, 6 Cir., 145 F.2d 602, 605, we said: "We are not authorized to consider contrary inferences that might have been indulged in by the Tax Court. Helvering v. National Grocery Co., 304 U.

S. 282, 294, 58 S.Ct. 932, 82 L.Ed. 1346." See also Commissioner of Internal Revenue v. Scottish Am. Inv. Co., 65 S.Ct. 169.

The Tax Court thought that the principles enunciated in Helvering v. Clifford, 309 U.S. 331, 60 S.Ct. 554, 84 L.Ed. 788, were applicable. The trust in the Clifford case was a family trust, wherein the donor had constituted himself the trustee and as such had retained complete control and management of the trust property, including principal and income. In these respects that case is similar to ours. It is dissimilar in that the trust was created for a short time, five years. Here we have long term trusts but this fact of itself does not place them beyond the pale of the Clifford decision. Central Nat. Bank v. Commissioner of Internal Revenue, 6 Cir., 141 F.2d 352, 355; Commissioner of Internal Revenue, v. Buck, 2 Cir., 120 F.2d 775, 778.

In the opinion in the Clifford case, it was said [309 U.S. 331, 60 S.Ct. 557]: "Our point here is that no one fact is normally decisive but that all considerations and circumstances of the kind we have mentioned are relevant to the question of ownership and are appropriate foundations for findings on that issue." See also Elias v. Helvering, 2 Cir., 122 F.2d 171, 173; Commissioner of Internal Revenue v. Buck, supra.

The gist of the opinion in the Clifford case is found in the statement 309 U.S. 331 at page 336, 60 S.Ct. at page 557, 84 L. Ed. 788: "Thus, where, as in this case, the benefits directly or indirectly retained blend so imperceptibly with the normal concepts of full ownership, we cannot say that the triers of fact committed reversible error when they found that the husband was the owner of the corpus for the purposes of § 22(a)." See also White v. Higgins, 1 Cir., 116 F.2d 312, 320; Merton's Law of Income Taxation, Vol. 6, Sec. 37.17.

We have found no case precisely like the one in hand, although several cases involving long term trusts have held the settlor taxable under the Clifford doctrine. In Warren v. Commissioner of Internal Revenue, 133 F.2d 312, we affirmed the Tax Court in a per curiam opinion. In that case there were three trusts, one for the benefit of the wife and one each for the benefit of children, aged 19 and 13 respectively. The settlor made himself sole trustee, retained the right to vote the stock in the trust and had exclusive management. The income was to be accumulated or distributed in the discretion of the trustee. The corpora of the children's trusts were not distributable until they reached the age of 35 years, although if the settlor was then living the trusts were to continue until his death. The cases thus have many similarities, although the fact in the Warren case that the settlor, as trustee, entered into a contract with himself as owner, to purchase a large number of stock certificates, may render it a stronger case for application of the Clifford rule.

In Williamson v. Commissioner of Internal Revenue, 7 Cir., 132 F.2d 489, the trust for the benefit of the settlor's wife and minor child was irrevocable. The settlor was himself one of three trustees who were given "uncontrolled discretion" to draw upon the corpus for the benefit of the beneficiaries. However, the settlor retained the right to vote the 5,000 shares of General Candy Corporation stock, comprising the body of the trust "in a sole and uncontrolled discretion," and retained the right to direct the sale, exchange, investment and reinvestment of the principal of the trust estate. There were 106,925 shares of the stock of the General Candy Corporation of which the settlor was president, of which he and his wife and father owned about 58,000 shares, before the trust was created. Without the 5000 shares from the trust, the family control may not have been assured. So, this, too, may be a somewhat stronger case than ours, but the Board of Tax Appeals held the settlor taxable for the income, and the Court of Appeals feeling itself bound thereby under the doctrine of Helvering v. Stuart, 317 U.S. 154, 63 S.Ct. 140, 87 L.Ed. 154, somewhat reluctantly it would seem, affirmed the decision of the Board. The court stated that the fact that the trust was of long term was only an element to be considered by the trier of the facts in appraising the situation.

In George v. Commissioner of Internal Revenue, 8 Cir., 143 F.2d 837, seven trusts in which the settlor was trustee ran for twelve years but the settlor retained the absolute right to control the disposition of the trust property by altering the proportion of the principal and the share of each beneficiary, etc., although there was a provision against personal profit or gain. The court concluded that the grantor was the owner of the trust property and realized and enjoyed the income therefrom. It affirmed the Tax Court.

The George case is somewhat similar to Commissioner of Internal Revenue v. Buck, supra [120 F.2d 777], wherein the settlor, although unable to revest title in himself, did retain the power until his death "freely to sprinkle the income about among any beneficiaries he may select * * *." The court concluded that while he lived he had as much to say about the management of the corpus as before he made the trust, and reversed the Board of Tax Appeals.

In Armstrong v. Commissioner of Internal Revenue, 10 Cir., 143 F.2d 700, the court reached the opposite conclusion and held that the settlor was nontaxable. Therein the settlor named himself trustee of a 5% interest in the partnership. The trust was to run for 12 years, after which it was to vest in the beneficiaries, his two sons. He retained absolute power of management of the trust estate, including the right to hold the stock in his own name, to vote it as he saw fit, to loan money on it, retaining a lien therefor. The court pointed out that the settlor was also manager of the partnership with a 50% interest and the powers he retained with reference to the trust were not significant in view of that fact and of the fact that every member of the partnership has an equal voice in its management, regardless of his interest. In Commissioner of Internal Revenue v. Katz, 7 Cir., 139 F. 2d 107, the Board, and the court affirming, held the income of the trusts not taxable to the settlor. The case is quite similar to the one before us and the Board's decision is puzzling, in view of its holding in this case and in the Warren case. It is perhaps distinguishable on the ground that the settlor expressly covenanted in the trust instrument to continue to support the beneficiaries during their minority.

We have cited these few cases pro and con in support of the proposition that there are no precise standards or guides, either in the Act, regulations or decisions of the courts, by which our inquiry may be conducted. The cases cited do not complete the catalogue. Each case must rest upon its own peculiar facts and circumstances. See Suhr v. Commissioner of Internal Revenue, 6 Cir., 126 F.2d 283, 287; Jones v. Norris, 10 Cir., 122 F.2d 6, 11.

However, in the present case, the Donor's designation of himself as Trustee, the fact that in his discretion the termination of the trust could be prolonged until his children reached the age of 40 years,

and in the event of their prior deaths leaving issue, until his grandchildren reached the age of 30 years, and the possible reverter of the trust estate to his own estate; his reservation of complete powers with respect to voting, handling and disposing of the corporate stocks which were the principal asset in the trust corpora, plus his personal ownership of and interest in 9,100 shares of the stock of the same corporation, being only 200 shares less than those in the corpora of the trusts; the fact that his retained voting powers might reasonably advance his own personal interests; that he as Trustee had the right to determine whether the assets of the estate were to be treated as income or capital, which might ultimately be returned to him or his estate,—all these matters considered in connection with "the intimacy of the familial relationship"—supply at least a "rational basis" for the conclusion of the Tax Court, and the judicial function becomes exhausted. Wilmington Trust Co. v. Helvering, 316 U.S. 164, 62 S.Ct. 984, 86 L.Ed. 1352; Dobson v. Commissioner of Internal Revenue, 320 U.S. 489, 501, 64 S.Ct. 239. Although the Tax Court did not pass upon respondent's contention that the income of the trust was taxable under Section 167(a) (1) of the Revenue Acts of 1936 and 1938, the respondent is entitled to and does raise that question here. Helvering v. Stuart, supra. Our conclusion is that the income of the trusts was not taxable under Section 167(a) (1). While there is a possible reverter of the trust estate to the estate of the Donor, which we took into consideration in determining whether the income of the trust was taxable under Section 22(a), still we find nothing in the trust indentures which puts it in the power of the grantor, discretionary or otherwise, to hold or accumulate income for the purpose of future distribution, to him. In considering Section 166 of the Revenue Act of 1934, the Supreme Court in Helvering v. Wood, 309 U.S. 344, 347, 60 S.Ct. 551, 553, 84 L. Ed. 796, said: "A reversion is the residue left in the grantor on determination of a particular estate." But this is entirely different in substance and in fact from a fund expressly accumulated from income by the grantor of a trust for future distribution to him. While Helvering v. Wood, supra, was dealing with Section 166, the principle announced is applicable to Section 167.

The decision of the Tax Court is affirmed.