## LITTEL v. COMMISSIONER OF INTERNAL REVENUE.

### No. 120.

Circuit Court of Appeals, Second Circuit.

April 9, 1946.

John A. Gage, of Washington, D. C., for petitioner.

Newton K. Fox, of Washington, D. C., for respondent.

Before L. HAND, SWAN and PHILLIPS, Circuit Judges.

L. HAND, Circuit Judge.

This case involves deficiencies in income tax for the years 1939, 1940 and 1941. The question is whether the income arising from three trusts created by the taxpayer on January 2, 1937, should be included in the income of the trusts, or in that of the grantor. The trusts were all alike and need not be separately considered. The trustees were the grantor, his mother, and a bank; and the declared purpose was to set up each fund in order to enable one of the grantor's sons—aged seventeen, fifteen and twelve—to pay his expenses in college, afterwards to support himself in his calling, and to acquire experience in the use of money. The trustees had full powers to invest and reinvest the principal; to collect the income and pay it to the son until he reached the age of fifty; and to pay over to him one-quarter of the principal at the age of thirty-five, another quarter at forty, a third at forty-five, and the rest at fifty. If the son died before receiving the whole principal, it was to go to his issue in equal shares. There were further remainders over, which we need not consider, except to say that the grantor could by no possibility take any part of the corpus or income. The trustees were authorized to vote upon all shares of stock, to consent to any reorganizations, or to the sale of securities, and to do any act with reference to securities necessary to take the benefits of reorganization and the like. They might also exercise any options declared upon securities, and sell or pledge them. The "title" was to be, first in the grantor as trustee, upon his death in his mother, and upon her death in the bank, unless she died before the grantor, in which event the bank was directly to succeed him. It is not entirely plain from the deed whether the powers vested in the trustees were to follow the "title": that is, whether the grantor, while he was trustee, was in sole control of the fund. However, that is the more natural interpretation and, in any event, since it was the practice, we shall assume that, in spite of the verbal grant of powers to the three trustees collectively, that trustee, who at the time held the "title," was vested with them. The final and most important provision we quote in the margin.[1]

The possible variants in trusts like these are so many that it is impossible to extract much help from the decisions; and, indeed, the answer of the Tax Court must almost always be accepted anyway. John Kelley Company v. Commissioner of Internal Revenue, and Talbot Mills v. Commissioner of Internal Revenue, 66 S.Ct. 299. However, so far as we can ascertain, we still have a theoretical responsibility, however vestigial, and for that reason it has seemed to us proper to discuss the merits. In Commissioner v. Buck, 120 F.2d 775, where we held that the income of the trust was the grantor's, our chief grounds were a reserved power to divert the income as the grantor chose—save, as here, that he could never appoint himself a beneficiary—and a power to control the investment of the fund and the like. So far there is no difference between that trust and those at bar. However, the grantor had there also reserved to himself the reversion after his wife's death, and it appeared that his independent resources were large enough to make little practical difference to him that he had parted with the income of the fund to his wife. The question is whether these differences serve to distinguish that decision as an authority. In dealing with trusts for the beneficiary's life the importance of a reversion depends upon

---

[1] "Notwithstanding anything to the contrary herein contained, the Grantor may from time to time during his lifetime by instrument in writing, executed, acknowledged and delivered to the Trustees, modify or alter this agreement and the trusts then existing, including (without limiting the generality of the foregoing) the power to change the beneficiaries of the income and principal thereof, and to increase or decrease their beneficial interest hereunder; provided, however, that the Grantor shall have no power to modify or alter this agreement or the trusts at any time existing hereunder so as to increase directly or indirectly the interest of the Grantor or his estate in the income from the trust funds nor to revest in the Grantor or his estate title to any part of the principal of the trust funds or undistributed income thereon."

the relative ages of the grantor and the beneficiary. If a man of seventy sets up a trust for his grandson of ten, the reversion can hardly be thought to be of importance: otherwise, if at forty he sets up a trust for his father of seventy-five. The wife's age in Commissioner v. Buck, supra, does not appear; but presumably she was younger than her husband, and the actuarial chance that he would survive was probably very slight. The relevance of the abundance of the grantor's other income lies only in how far he will regard the trust as changing any disposition he might have made, if he had still kept power over the income from the trust fund. Ordinarily, a man, providing for his sons, does not put beyond his reach more than the minimum that he would give them in any event. For these reasons we cannot think that the distinctions between Commissioner v. Buck, supra, and the trusts at bar should be decisive.

Of course, there must come an end to the sufficiency of what remains after successive elements of reserved control are subtracted; it has yet to be decided, for example, that the income of a trust for the life of a son, the reversion remaining in the grantor, remains the grantor's. One would be rightly charged with a perverse insistence upon verbal consistency, who should argue that such a limitation fell within Helvering v. Horst, 311 U.S. 112, 61 S.Ct. 144, 85 L.Ed. 75, 131 A.L.R. 655, on the theory that "realistically" the deed did no more than transfer future income of property which remained the grantor's; or that the spectacle of the beneficiary's material enjoyment, was the most important, as it would be certainly the most spiritual, of those satisfactions whose congeries constitutes property. We shall be guilty of no such wayward misapplication of any doctrine which can be drawn from the books, if we affirm this order. The power which can be exercised over the lives of others by the ability to give or withhold money, is a substantial enjoyment, and so is the mere power to invest and in general to keep the outward indicia of ownership. People will no doubt differ in balancing these gratifications against the command over goods and services which the possession of the income itself gives; but we are disposed to think that the combination of powers here reserved is under modern notions enough to keep the income of the trust a part of the grantor's income;

and in this we have the support, not only of the Third Circuit (Brown v. Commissioner, 131 F.2d 640), but of the Eighth (George v. Commissioner, 143 F.2d 837, 840). If we were called upon to state any principle from which that conclusion could be deduced, we should be at a loss; we should be compelled to fall back upon fiat: "We go so far here, because we think it a sensible place to stop for the present." That perhaps makes all the more important the finality of decisions of the Tax Court.

Order affirmed.