Albina Elise Bodell v. Commissioner.
Bodell v. Commissioner
Docket No. 109651.
United States Tax Court
1943 Tax Ct. Memo LEXIS 518; 1 T.C.M. (CCH) 395; T.C.M. (RIA) 43015; January 9, 1943
*518 In 1939 petitioner, in fulfillment of desires of her deceased husband that their children be provided for, created three trusts for benefit of her children, two of whom were minors, naming herself and her deceased husband's brother as trustees. The trusts provided that the trustees should accumulate the income during each calendar year and on January 5th of the following year distribute not in excess of $4,000 to petitioner, if living. In the case of the beneficiary over 21 years of age, accumulated income not distributed to petitioner was to be distributed to him, if living, in monthly installments beginning January 5th of each year following the year of accumulation of the income. In the case of the trusts for the minor children, accumulated income not distributed to petitioner was, during the minority of the beneficiaries, to be added to the principal of the trust estate in such portions as the trustees deemed wise. In their discretion the trustees could use the income, including capital gains of the trust, for the maintenance, education and support of the minors who were beneficiaries. Each trust was to continue in effect at least until the death of the last to survive of petitioner *519 and the three children. The corpus of each trust could revert to petitioner only upon a remote contingency. The trustees were given broad powers of management over the trust corpus. The co-trustee, not petitioner, was the dominating trustee. Held, petitioner is not taxable during 1939 and 1940 on the entire trust income accumulated during those years under section 22 (a). Helvering v. Clifford, 309 U.S. 331, distinguished. Held, petitioner is taxable under section 167 (a) (1) to the extent of $4,000 accumulated by each trust during the taxable years in question although those amounts were not distributed to petitioner until the following year. Held, petitioner is not taxable on income accumulated for the beneficiary over 21 years of age and subsequently distributed to him. Held, petitioner is taxable under section 167 (a) (1) on income accumulated by the trustees which in their discretion might have been used for the support, maintenance and education of the minor children. Helvering v. Stuart, 317 U.S. 154. Ira Lloyd Letts, Esq., 32 Custom House St., Providence, R.I., and Richard F. Canning, Esq., 32 Custom House St., Providence, *520 R.I., for the petitioner. Davis Haskin, Esq., for the respondent. VAN FOSSAN Memorandum Findings of Fact and Opinion Respondent determined deficiencies against petitioner in income taxes for the calendar years 1939 and 1940 in the respective amounts of $2,085.96 and $4,171.28. The deficiencies were the result of including in petitioner's gross income part of the income from three trusts of which petitioner was the grantor. Respondent now requests this Court to increase the deficiencies to include the entire net income from the three trusts. The first issue before us is whether the entire income from three trusts created by petitioner was taxable to her during the taxable years. If we decide that the entire income was not taxable to petitioner, we are then presented with the problem whether any part of the trust income was taxable to her. The second issue concerns the deductibility of certain "non-business" expenses on the returns of petitioner and of the trusts. Findings of Fact We adopt as a part of our findings of fact the stipulation of the parties which is substantially as follows: Petitioner resides at 25 Balton Road, Providence, Rhode Island. The returns for the periods *521 herein involved were filed with the Collector of Internal Revenue for the District of Rhode Island. On April 8, 1939, petitioner executed three instruments entitled "Philip Trahan Bodell, Trust," "Ann Bodell Trust" and "Jeannette Elise Bodell Trust." During the balance of the calendar year 1939, petitioner and/or Joseph J. Bodell, hereinafter referred to as the "trustees," received the income arising under each trust but during such year made no distribution of such income. On January 5, 1940 the trustees paid to petitioner out of such 1939 income $4,000 under each trust. During the year 1940 the trustees distributed out of the balance of such 1939 income under the "Philip Trahan Bodell Trust" $150 per month to Philip Trahan Bodell. Except as herein set forth no part of the balance of such 1939 income under the "Philip Trahan Bodell Trust," the "Jeannette Elise Bodell Trust" and the "Ann Bodell Trust" has been distributed. During the calendar year 1940 the trustees received the income arising under each trust but during such year made no distribution of such income. On January 6, 1941, the trustees paid to petitioner out of such 1940 income $4,000 under each trust. During the year *522 1941 the trustees distributed out of the balance of such 1940 income under the "Philip Trahan Bodell Trust" $150 per month to Philip Trahan Bodell. Except as herein set forth no part of the balance of such 1940 income under the "Philip Trahan Bodell Trust," the "Jeannette Elise Bodell Trust" and the "Ann Bodell Trust" has been distributed. In the income tax returns filed for the trusts for the years 1939 and 1940 the trustees returned what they computed to be the net income under each trust on the basis that the entire net income was taxable to the trust. The taxes shown on such returns to be due were paid. Pending the outcome of this proceeding, no refunds have been made to the trustees. In the income tax return of each trust for the year 1939 there was deducted the sum of $3.10 representing an amount paid by the trustees for bookkeeping supplies. In the income tax return for each trust for 1940 the sum of $55.20 was deducted, representing $20 paid by the trustees for the rent of a safe deposit box for the securities of the trust and $32.20 paid to a certified public accountant for services rendered in auditing the books of the trusts. In her income tax return for each of the *523 years 1939 and 1940, the petitioner deducted the sum of $390, representing $360 paid to a bookkeeper for services rendered in keeping her personal books and $30 for the rent of a safe deposit box for her personal securities. It was agreed that if prior to the final determination of the issues involved in this proceeding, Congress should enact a law whereunder these deductions shall be allowable, the said deductions shall be allowed in computing the net income of the petitioner. During the years 1939 and 1940 the petitioner was a widow and the mother of Ann Bodell and Jeannette Elise Bodell, who throughout said years were less than twenty-one years of age. During 1939 and 1940 Philip Trahan Bodell was more than twenty-one years of age. Joseph J. Bodell was the brother-in-law of the petitioner. The net income of the trusts without the allowance for the deductions referred to was as follows: Total Net
Year
Trust
Year
Income
Philip Trahan Bodell
1939
$8,097.69
1940
8,743.07
Ann Bodell
1939
8,142.84
1940
8,735.84
Jeannette Elise Bodell
1939
8,097.54
1940
8,741.02
Short Term
Long Term
Capital Gain
Capital Gain
included in Total
included in Total
Trust
Net Income
Net Income
Philip Trahan Bodell
$1,968.35
$352.06
372.41
Ann Bodell 2,006.76
361.86
372.42
Jeannette Elise Bodell
1,967.84
352.05
372.43
*524 Each of the trusts in question (copies of which were attached to the stipulation) were duly created by petitioner on April 8, 1939, and continued as valid and existing trusts during the remainder of 1939 and during 1940. The "Philip Trahan Bodell Trust" provided, inter alia, that the trustees should accumulate the net income arising during each calendar year and in each year should pay over and distribute the income accumulated during the preceding calendar year as follows: On the 5th day of January in each year to the settlor so much thereof as is not in excess of $4,000, provided that she is living on each such day of payment. During the life of the settlor so much of the net income in each year as is not distributed to the settlor, and after her death, all of the net income to Philip Trahan Bodell, in monthly installments on the 5th day of each and every month, beginning January 5th in each year, provided he is living on each such day of payment. Upon the death of Philip Trahan Bodell the net income, to which he would have been entitled if living, was to be paid to his wife and issue in such proportions as he should appoint by will. In default of such appointment, or upon *525 the death of any wife entitled to the income, the income was to be paid to his issue per stirpes. If there were no such issue, one-half the income was to be paid to the beneficiaries, excepting petitioner, then entitled to the income under the "Ann Bodell Trust" and the other half to the beneficiaries, excepting petitioner, entitled to the income under the "Jeannette Elise Bodell Trust." If there were no beneficiaries other than petitioner entitled to income under either trust, the income was to be paid to petitioner. If any wife of Philip Trahan Bodell should survive both Philip Trahan Bodell and petitioner and should be entitled to income from the trust by specific appointment under the will of Philip Trahan Bodell, the trust was to terminate upon the death of the last to survive among such wife, petitioner, Ann Bodell and Jeannette Elise Bodell, otherwise upon the death of the last to survive among Philip Trahan Bodell, petitioner, Ann Bodell and Jeannette Elise Bodell. Upon termination the trust corpus and accumulations of income were to be paid over to the issue of Philip Trahan Bodell in equal shares per stirpes, provided that if any such issue was not twenty-one *526 years of age, his share was to be retained by the trustees and only the income thereof paid to such beneficiary until he reached twenty-one years of age when his share of the principal should be paid over to him. If before the distribution of the respective shares Philip Trahan Bodell should die without issue surviving him or if all his children should die without issue surviving them, one-half of the trust corpus was to be paid to the issue of Ann Bodell per stirpes, but if there were no such issue then living, to such persons as would be entitled to share in the estate of Philip Trahan Bodell under the laws of intestacy of Rhode Island. The other half of the corpus was to be paid to the issue of Jeannette Elise Bodell per stirpes but if there were no such issue then living this part of the corpus was likewise to be paid to such persons as would be entitled to share in the estate of Philip Trahan Bodell under the laws of intestacy of Rhode Island. The "Ann Bodell Trust" and the "Jeannette Elise Bodell Trust" contain practically the same provisions as those in the "Philip Trahan Bodell Trust" described above except (1) the name; (2) during the minority of Ann Bodell and *527 Jeannette Elise Bodell the trustees at their discretion were to add to the principal of the trust estate such portions of the incomes to which the minors were entitled; and (3) there were no provisions giving Ann Bodell and Jeannette Elise Bodell testamentary powers of appointment over the income of the trusts or entitling their husbands to such income. Each trust gave to the trustees identical powers of handling the financial details of the respective trust. Principally these powers were to sell, exchange, mortgage, lease, pledge or otherwise deal with the trust corpus; in their uncontrolled discretion to invest, reinvest and change the investment of the trust estate; in their discretion to continue the form of investment at the time of the execution of the trust; to appoint any agent, attorney or proxy to act on their behalf in transferring property and in voting trust stock; in their discretion to hold trust property either in their own names or in the name of their nominees; in case of purchase or sale at a premium or a discount of obligations owned by the trust to use their discretion in determining the manner of treating the premiums or discounts; in dividing or distributing *528 principal of the trust estate to use their sole discretion in determining what part should be in kind and what part in money and in determining the relative value for the purpose of the division or distribution; in their discretion to determine whether any part of the trust estate or any addition or increment thereto was income or principal or whether any cost, charge, expense, tax or assessment should be charged against income or principal; and to enter into any agreements with reference to the reorganization, consolidation or merger of any corporation, the stocks, bonds or other obligations of which formed a part of the trust estate. The trustees were in addition vested "with all such other powers, privileges or discretions as may be necessary, convenient or incidental to the execution of any of the trusts herein created or to the management or disposition of any property belonging to the trust estate as the trustees may see fit to exercise; and the enumeration of specific powers herein shall not be construed to withhold, limit, disparage or qualify any other powers, privileges or discretions which said trustees may deem it best to exercise." The trustees under each trust were *529 accountable only for their own acts, receipts, neglects and defaults and were not liable for any deficiency, or loss or depreciation of trust property unless due to their wilful misconduct, fraud or default. Each of the trusts provided that during the minority or disability of any person entitled to income under the trusts, the trustees could pay the income to the person having actual custody of such beneficiary or apply the same for the maintenance, education, support or otherwise for the benefit of such person. Each of the trusts was irrevocable. In addition to the facts found from the stipulation and trusts, we find: Petitioner is the widow and sole beneficiary under the will of Frederick Bodell who died on June 20, 1938. Joseph J. Bodell, brother of Frederick Bodell and an investment banker, was executor under such will. A few days prior to his death, Frederick Bodell spoke with his brother Joseph about contemplated changes in his will saying that he had been too ill to make a satisfactory will although he had tried several times to execute one and that he expected his brother to take care of the children as the brother would his own. Drafts of a contemplated changed will had *530 been prepared making provisions for the children. After the death of Frederick Bodell, Joseph J. Bodell urged petitioner to set up a trust of half of her estate for the benefit of the children. At first petitioner demurred, but on the insistence of Joseph J. Bodell the trusts in question were created with stocks belonging to petitioner. The trust records were prepared and kept at the office of Joseph J. Bodell. The trust property was kept in a safe deposit box in the names of "J. J. Bodell and Albina E. Bodell, trustees." Joseph J. Bodell advised petitioner as to what trust property should be sold. This advice was always followed without question. Income from the trust was collected by Joseph J. Bodell and deposited by him to the account of the trusts. Joseph J. Bodell dictated as to the amounts of income of the trust which were to be distributed and which were to be accumulated. Undistributed income of the "Ann Bodell Trust" and "Jeannette Bodell Trust" was made a part of the corpus of the trusts. Opinion VAN FOSSAN, Judge: The first question is whether the entire income from the three trusts created by petitioner was taxable income to her during the taxable years. It is respondent's *531 contention that the rights and benefits enjoyed by petitioner in the trust assets were such as to make her in reality owner of the property within the meaning of section 22 (a), Internal Revenue Code, and Helvering v. Clifford, 309 U.S. 331. As stated by the Supreme Court in the Clifford case, the "issue is whether the grantor after the trust has been established may be treated as the owner of the corpus. * * * The answer to that question must depend on an analysis of the terms of the trust and all the circumstances attendant on its creation and operation." The record discloses that the reason for the creation of the trusts was to carry out the wishes of petitioner's husband. Due to illness he had been unable to carry out his intention to provide for his children by means of a will. After his death, and at the insistence of the decedent's brother, petitioner reluctantly created the trust for the benefit of the children. Although petitioner was a co-trustee, her activity in such office was pro forma. The record leaves no doubt that the decedent's brother, not petitioner, was the dominating figure in the management of the trusts. The trust *532 records were prepared and kept in his office. His advice relating to sales of trust property was always followed and he dictated the amounts of income from the trusts to be distributed or amounts to be accumulated. A study of the testimony of the decedent's brother at the hearing leaves the inevitable impression that he, not petitioner, controlled the management of the trusts. Looking to the terms of the trusts, we see that the trusts were irrevocable and that each trust was to continue in effect until the death of the last to survive among petitioner, Philip Trahan Bodell, Ann Bodell, and Jeannette Elise Bodell. Added to this list, in the case of the Philip Trahan Bodell trust, was any wife of Philip surviving him and entitled to income from the trust. The corpus of each of the trusts could revert to petitioner only upon the remote contingency of the prior death of all of the above beneficiaries leaving no issue. During the existence of the trusts petitioner had no dominion or control over the corpus or the entire income therefrom except through her management powers as trustee, in which capacity petitioner relied blindly upon the co-trustee regarding questions of management of *533 the trust estate. In the light of the foregoing, it is our opinion that by creating the trusts petitioner placed the real ownership in the trust property beyond herself. In this respect the trusts in question are distinguishable from the one involved in the Clifford case, supra. There the trust was for a short term; the grantor was the sole trustee and had absolute discretion to pay over to his wife the whole or part of the net income therefrom; the corpus of the trust was to revert to the grantor on its termination. A similar distinction was made in Commissioner v. Branch, 114 Fed. (2d) 985, wherein the Circuit Court of Appeals for the First Circuit stated: Helvering v. Clifford rests on its particular facts, as the court was careful to say. * * * Where the grantor has stripped himself of all command over the income for an indefinite period, and in all probability, under the terms of the trust instrument, will never regain beneficial ownership of the corpus, there seems to be no statutory basis for treating the income as that of the grantor under Section 22(a) merely because he has made himself trustee with broad power in that capacity *534 to manage the trust estate. * * * The Board of Tax Appeals, following Commissioner v. Branch, supra, made this statement in Frederick Ayer, 45 B.T.A. 146: * * * It should be remembered that the trusts involved in the instant case were not short term trusts, as in the Clifford case, but were for the life of the beneficiary named in the respective trusts. The corpus and accumulated income were not to revert to the grantor except upon a remote contingency. Under those circumstances, we do not think Helvering v. Clifford, supra, is controlling. Accordingly, we hold that petitioner is not taxable on the entire income from the trusts under section 22(a). Commissioner v. Betts, 123 Fed. (2d) 534, and cases therein cited; Meyer Katz, 46 B.T.A. 187. The next question is whether petitioner is taxable on any part of the trust income. Petitioner contends that since the income, under the terms of the trusts, had to be accumulated during the year and was not distributable until the next succeeding year, it was not taxable to her *535 individually but to the trustees under sections 161 and 162 of the Internal Revenue Code. Respondent argues that even though petitioner is not taxable on the entire trust income under section 22(a), she is taxable at least under section 167 of the Internal Revenue Code, [1] on that part of the income distributable and actually distributed to her. *536 Under section 161, income accumulated by a trustee for future distribution under the terms of the trust is taxable to the trustee, except as provided in sections 166 and 167. Thus, by its own terms, section 161 is qualified by sections 166 and 167. We are concerned with section 167. In our opinion section 167 exactly covers the situation with regard to the distribution to petitioner of $4,000 of income from each trust, which income was to be distributed on the 5th day of January following the year of its accumulation by the trustees. The petitioner admits that the interest of the co-trustee was not adverse. We hold that petitioner-grantor is taxable for the years 1939 and 1940 under section 167(a) (1) on income distributed to her from the trusts on January 5, 1940, and January 6, 1941, respectively. Phipps v. Helvering, 124 Fed. (2d) 288; Kent v. Rothensies, 120 Fed. (2d) 476, certiorari denied, 62 S. Ct. 113. In the latter case income from trusts not distributed to named beneficiaries was to be accumulated by the trustees for two years and then distributed to the grantor, if living. In holding *537 the grantor taxable under section 167(a) (1), rather than the trustees under section 161, the court made this statement: It is our duty to construe the statutory language as written. Nowhere in Section 167 is there any suggestion that the accumulations of trust income must actually be distributed to the grantor in order to make the section applicable. Indeed, even if the right of the grantor to the accumulations were absolutely vested he would not actually receive them if he died prior to the date of distribution. Nor is there any suggestion in the section that the trust income must be held or accumulated exclusively for the grantor. The plaintiff is not only one of a number of persons to whom distribution may eventually be made but in fact is the presumptive taker of the trust accumulations. As a practical matter, so long as the plaintiff is alive the accumulations of the trust income are for him. And since the Revenue Acts are concerned solely with the practical aspects of income taxation and not with the question whether the right of the taxpayer to the income is conditional or unconditional, contingent or vested subject to being divested by death, we think the plaintiff is subject *538 to the tax under the language of Section 167 as written. Petitioner has cited as authority for her position cases in which income of trust to be accumulated for future distributions to beneficiaries other than the grantors was held taxable to the trustees, not the beneficiaries. Commissioner v. Dean, 102 Fed. (2d) 699; Augustus H. Eustis, 30 B.T.A. 820, Graham v. Miller, 46 Fed. Supp. 900. These cases all involved testamentary trusts so that the income could never be distributed to the grantors of the trusts as provided in section 167(a). Thus the only sections applicable to those cases were sections 161 and 162. Here section 167(a) is applicable. Respondent's contention that petitioner is also taxable on income distributed to Philip Trahan Bodell with respect to the $150 a month paid to him under the trust bearing his name is without merit. Philip was more than 21 years of age so that petitioner was under no maternal duty of support, and "the 'non-material' satisfactions (gift-contributions) of a donor are not taxable as income." Helvering v. Stuart, 317 U.S. 154. *539 We hold, however, that petitioner is taxable on income of the Ann Bodell and Jeannette Elise Bodell trusts in excess of $4,000. Under Rhode Island law petitioner was liable for the care, nurture, welfare, and education of Ann and Jeannette Elise Bodell, who were both minors. Under the terms of the trusts for the benefit of these minors the income, including capital gains, which in the discretion of the trustees, could be treated as income in excess of the $4,000 for petitioner, could be used for maintenance, education, and support of the minors. The co-trustee had no interest adverse to the grantor. Thus, while no income was used during the taxable years for these purposes, nevertheless petitioner is taxable on the income, including capital gains, which might have been used therefor. As was recently stated by the Supreme Court in Helvering v. Stuart, supra: * * * We are dealing with a trust for minors where the trustees, without any interest adverse much of the net income as "to them shall seem advisable" to the "education, support and maintenance" of the minor. The applicable statute says. "Where any part of the income * * * may * * * be distributed *540 to the grantor * * * then such part * * * shall be included in computing the net income of the grantor." Under such a provision the possibility of the use of the income to relieve the grantor, pro tanto, of his parental obligation is sufficient to bring the entire income of these trusts for minors within the rule of attribution laid down in Douglas v. Willcuts. The parties stipulated that certain nonbusiness expenses should be allowed if Congress passed permissive legislation. The Revenue Act of 1942 contains such provisions. These expenses will be allowed in the recomputation consequent hereon. Decision will be entered under Rule 50.
Footnotes
1. SEC. 167. INCOME FOR BENEFIT OF GRANTOR (a) Where any part of the income of a trust - (1) is, or in the discretion of the grantor or of any person not having a substantial adverse interest in the disposition of such part of the income may be, held or accumulated for future distribution to the grantor; or (2) may, in the discretion of the grantor or of any person not having a substantial adverse interest in the disposition of such part of the income, be distributed to the grantor; or * * * * *
then such part of the income of the trust shall be included in computing the net income of the grantor. (b) As used in this section the term "in the discretion of the grantor" means "in the discretion of the grantor, either alone or in conjunction with any person not having a substantial adverse interest in the disposition of the part of the income in question."↩