Ralph C. Parker v. Commissioner.
Parker v. Commissioner
Docket Nos. 108198, 111926.
United States Tax Court
1943 Tax Ct. Memo LEXIS 424; 1 T.C.M. (CCH) 686; T.C.M. (RIA) 43104; March 2, 1943
*424 Robert R. Rankin, Esq., 710 Yeon Bldg., Portland, Ore., and Ray H. Lesher, C.P.A., for the petitioner. Alva C. Baird, Esq., for the respondent. HARRON Memorandum Findings of Fact and Opinion HARRON, Judge: Respondent determined deficiencies in income tax in the amounts of $6,369.20 and $3,476.45 for the years 1939 and 1940, respectively. Petitioner assails the inclusion in his income of the income of two trusts created by him for the benefit of his two children. The returns were filed with the collector for the district of Oregon. Findings of Fact Petitioner resides in Portland, Oregon. He is the father of two children, Margaret, born February 16, 1921, and Richard, born February 16, 1922. Both children were minors during the taxable years. On December 1, 1937, petitioner executed two trust agreements. They were made in Oregon. He created two separate trusts, one for the benefit of Margaret, hereinafter called Trust P-2221, and one for Richard, hereinafter called Trust P-2222. Under each trust agreement, The United States National Bank of Portland (Oregon), a national banking corporation, hereinafter called the trustee, was named trustee. The trust agreements are identical in *425 terms, with a few minor exceptions. The trust agreements provided that the trusts were irrevocable and that the grantor alone or in conjunction with any other person or persons, was without power to revoke, change or modify any provisions of the trust. It is provided in each trust agreement that the trust income is to be paid to the named beneficiary, and that, in addition to such payments of income, the trustee, in its discretion, can pay to the beneficiary, or on his behalf, "such sum or sums from the principal, of the trust fund as the trustee shall deem necessary for the proper maintenance, support, welfare and education" of the beneficiary. Artical VII of each trust agreement provides as follows: Article VII. Legal Disability Clause. Payments due any beneficiary hereunder, who is a minor or under legal disability, may at the discretion of the Trustee, be paid directly to such beneficiary, without the intervention of any legal guardian, or to a relative of such beneficiary, or to the legal guardian of such beneficiary, or may be expended by the Trustee for the maintenance, support and education of such beneficiary; and such payment or expenditure shall, in each instance, be *426 a full acquittance to the Trustee. The principal of each trust fund was to be distributed as follows: Margaret was to receive one-half of the principal of Trust P-2221 when she attained the age of thirty-five and the balance when she attained the age of forty; Richard was to receive one-fourth, one-third of the balance, one-half of the balance, and the balance of the principal of Trust P-2222 when he attained the ages of twenty-five, thirty, thirty-five, and forty, respectively. In the event of the beneficiary's death before receiving all of the principal and accumulations of the trust, the balance was to be distributed to the beneficiary's surviving issue, or, if the beneficiary left no surviving issue, to the beneficiary's then living heirs-at-law. The trust instruments gave the trustee broad powers of management over the corpora of the trust. The trustee was empowered, inter alia, to invest and reinvest the assets of the trust fund without statutory or legal limitation; to vote any stock or security held in trust; to make any division or distribution in kind, or partly in kind and partly in money; and to manage, administer, and dispose of the trust assets in such manner *427 as it deemed necessary and proper for the discharge of the trust. The grantor reserved the power, during his lifetime, to direct the trustee with respect to the making, changing or retaining of any trust investment and the voting of any stock held in either trust. Petitioner executed supplementary trust agreements, dated as of December 31, 1941, wherein he disclaimed any and all right, power, or privilege under the trust, and all rights to the trust corpus. The corpus of each trust originally consisted of 175 shares preferred 8 percent stock, par value $100, of Automobile Securities Company stock. Fifty additional shares of the same stock were added to each trust as of March 31, 1938. Petitioner organized the Automobile Securities Company, an Oregon corporation, in 1922, and it was operated under his management. Automobile Securities Company was dissolved in 1938 and petitioner carried on the business under the same name, first, as a sole owner, and subsequently, with a Mr. White, as a partnership. Four shares, par value $100, of Auto Credit, Inc. stock was received by each trust as of December 10, 1937. Petitioner was the president of Auto Credit, Inc., an Oregon corporation, which *428 was a small corporation organized for the purpose of making direct loans on automobiles. The income of each trust, derived from dividends during the years 1937 and 1938, was distributed to petitioner for the account of each beneficiary as follows: $300 in 1937; $1,550 in 1938; and $1,450 in 1939. On December 29, 1938, petitioner withdrew the Automobile Security Company stock from each trust and substituted therefor his personal unsecured eight percent notes in the amount of $22,500. Auto Credit, Inc. was dissolved in 1938. A first and final liquidating dividend of $400 was received by each trust, as of December 31, 1938, for the Auto Credit, Inc. stock. During the taxable years 1939 and 1940, petitioner borrowed money from each trust as follows: $3,500 on January 16, 1939; $5,000 on January 25, 1939; $2,500 on December 18, 1939; and $4,000 on February 23, 1940. Most of the amounts so borrowed were trust income arising out of interest on petitioner's notes or sums transferred to the trusts by petitioner or the beneficiaries. These loans were evidenced by petitioner's personal unsecured six months demand notes bearing interest at eight percent. The interest paid on these notes was *429 claimed as a deduction in petitioner's returns. The effect of these transactions was that petitioner placed money in the trusts and borrowed it back for use in his automobile business. At the request of the trustee, the notes were exchanged for twelve-month demand notes at the same ratio of interest. From December 1, 1939, until December 1, 1940, the assets of the trusts consisted entirely of petitioner's unsecured notes. All of the notes were paid during the years 1940 and 1941. All changes in the corpora of the trusts were discussed by petitioner and the trustee before any action was taken relative to such changes. Formal written directions were then drawn up by the trustee on prepared forms and signed by petitioner. Prior to the date of the supplemental agreement, the trustee did not make any change in the assets of the trust or any investments without a specific and definite authorization from petitioner. Petitioner instructed the trustee to purchase some stocks owned by petitioner. During the years 1940 and 1941, the trustee invested trust funds in various stocks and a real estate mortgage. The trustee did not follow its usual policy in the selection of investments for the *430 trusts, because petitioner had the right to approve or disapprove the investments. The trusts paid the initial premiums, each, of approximately $225, for two policies of insurance taken out in August, 1940. Each policy was for $10,000 on the lives of petitioner's children. The duration of each policy was for a period of thirty years. Each policy named petitioner's child other than the one insured as beneficiary and petitioner as contingent beneficiary. In August, 1940, the trustee paid premiums, each, of approximately $215, for two other insurance policies on the lives of petitioner's children. In January, 1941, the trustee paid the amounts of $7,267.60 and $7,142.40, respectively, for two single premium fifteen-year endowment policies, each in the sum of $10,000 on the lives of Margaret and Richard. Both of these policies were payable to the United States National Bank, as trustee. The right to change the beneficiary and the other rights under the policies were reserved to the trustee. None of the income of the trusts was used to support petitioner's children during the taxable years. Petitioner paid their living, school, personal and general expenses out of his own funds. In *431 July of 1942, the trustee, at petitioner's instigation, filed suits in the Circuit Court of the State of Oregon in order to have a state court determination of the effect of the Oregon law on the trusts involved herein. Respondent was notified of these proceedings and his representatives were present at the trial thereof, but took no direct part in the proceedings. The court decreed that the trusts, from their inception, have been irrevocable and that petitioner had no reserved power under the original trust agreements to control the principal or net income of the trusts. The total income of the trusts for the years 1939 and 1940 was in the respective amounts of $4,960 and $5,908.44. The trustee reported the income of the trusts and paid income tax thereon. Respondent added $4,960 to petitioner's income for the year 1939 and $5,980.44 for the year 1940. Opinion The only question is whether the entire income of the two trusts for the benefit of petitioner's minor children is taxable to petitioner, the grantor of the trusts, under section 167 of the Internal Revenue Code. The trusts were created for the benefit of petitioner's children who were minors during the taxable years. The *432 distribution of trust income is covered by three provisions of the trust agreements, Article VII, which has been quoted in the findings of fact, and subparagraphs (a) and (e) of Article IX, the substance of which has been stated in the findings of fact. All of these provisions must be considered together to determine the uses to which the trust income could be put during the taxable years. During the minority of the beneficiaries, the payments due the beneficiary can be expended by the trustee, in its discretion, for the maintenance, support and education of the beneficiary. Petitioner had the duty to support each minor child during the taxable years. There cannot be any question that, in the taxable years, each trust could be used to provide for the support of the minor children. Under such set of facts the decision is controlled by Helvering v. Stuart, 317 U.S. 154; 63 S. Ct. 140, 87 L. Ed. 154. The entire income of each trust for a minor child is taxable to petitioner under section 167, because "the possibility of the use of the income to relieve the grantor, pro tanto, of his parental obligation is sufficient to bring the entire *433 income * * * within the rule of attribution laid down in Douglas v. Willcuts." It is not material in this proceeding that petitioner provided for his children during the taxable years with his own individual funds and that none of the trust income was used to maintain and support the children. The trustee had unlimited discretion to use the income for the benefit of the children, during their minority and no provision of the trust would have been violated if the trustee had seen fit to use the income of each trust for the support of the children, "and thus, pro tanto, to relieve the petitioner of the burden of his parental duty." Seymour H. Knox, 1 T.C. 575. See also, Lauretta Reeb Henrich, 1 T.C. 219, 221. Decision will be entered for the respondent.