John Koehrer, by the Union National Bank of Pittsburgh, His Guardian v. Commissioner.
Koehrer v. Commissioner
Docket No. 2579.
United States Tax Court
1945 Tax Ct. Memo LEXIS 292; 4 T.C.M. (CCH) 219; T.C.M. (RIA) 45068; February 15, 1945
George L. Eynon, Esq., Union Nat. Bldg., Pittsburgh, Pa., for the petitioner. Richard L. Shook, Esq., for the respondent. LEECH
Memorandum Findings of Fact and Opinion LEECH, Judge: This proceeding seeks a redetermination of deficiencies in income tax for the years 1939 and 1940 in the respective amounts of $1,106.70 and $1,470.01. The issues are: (1) whether all the income of the John Koehrer trust for the years 1939 and 1940 is taxable to the grantor, and (2) whether the sums received by the taxpayer pursuant *293 to "life annuity" contracts during the years 1939 and 1940 were annuity payments within the purview of section 22(b) (2) of the Internal Revenue Code. The case was submitted on a written stipulation of facts, which is adopted as our findings of fact. Findings of Fact John Koehrer (hereinafter called "the taxpayer"), is an individual residing at 707 Delafield Road, Fox Chapel Borough, Allegheny County, Pennsylvania. The income tax returns for the periods involved were filed with the collector of internal revenue for the 23rd district of Pennsylvania at Pittsburgh, Pennsylvania. The Union Bank of Pittsburgh (hereinafter referred to as "the Union Bank"), is a corporation. On September 16, 1941, the taxpayer was adjudged a weak-minded person, and the Union Bank was duly appointed guardian of his estate. The Union Bank filed the petition herein in its capacity as guardian. Prior to July 13, 1938, the taxpayer suffered from certain mental disorders which periodically rendered him unable to manage his own estate. Realizing his mental incapacities, the taxpayer, on July 13, 1938, executed a trust instrument whereby he "irrevocably" assigned and transferred certain *294 property to the Union Bank as trustee. Included in the property assigned was a stock contract, then in the process of liquidation, between the taxpayer and his employer. Pursuant to the stock contract the taxpayer was to receive in excess of $27,000 per annum. The taxpayer was advised and realized that the income resulting from this liquidation would be taxable to him under the Federal income tax law. The trust agreement, so far as material, may be summarized as follows: The trustee was directed to manage the corpus, collect and distribute the income; the trustee was vested with broad powers of management and investment, including the power to sell, reinvest the proceeds of sale, and to hypothecate and sell all or any part of the corpus; the trustee was directed to use the trust income to pay the taxpayer's real estate, personal property, and "income taxes", and to pay to his daughter, Helen K. Andersen, $100 per month for the purpose of defraying his household expenses; the balance of the income was payable: one-half to the taxpayer and one-quarter to each of his two daughters during his life; upon the death of the taxpayer the principal of the trust and any unexpended income was *295 to be paid to the executors named in the taxpayer's will; the trustee was authorized to pay all income taxes out of principal "if it should so desire"; it was further provided "If, in the judgment of my two daughters and the trustee herein, it becomes necessary to expend all or part of the principal * * * for my maintenance and support * * * the trustee herein is authorized to distribute for that purpose so much of the principal as my two daughters shall authorize in writing." On August 29, 1940, one of taxpayer's daughters, Helen K. Andersen, died without issue surviving. On September 9, 1940, the taxpayer, with the consent of his surviving daughter, executed an Amended Trust Agreement. This Amended Agreement ratified certain provisions, revoked others of the trust agreement of July 13, 1938, and added certain new provisions. The trustee's broad powers of management and investment, the provision authorizing the expenditure of trust income for the payment of the taxpayer's taxes, and the power to invade the corpus to pay the taxpayer's Federal income taxes were all ratified and confirmed. In addition, the Amended Agreement provided for monthly payments of $200 to the taxpayer's remaining *296 daughter, Mildred K. Knight, during his life and $200 monthly for the benefit of his divorced wife during her life. His wife, who had already remarried, died in January 1941. The balance of the income was to be expended for the taxpayer's maintenance and support. The payment of $100 per month for taxpayer's household expenses as appearing in the original trust was eliminated and the trustee was further authorized to expend so much of the principal as it deemed necessary for the taxpayer's maintenance and support. During the existence of the trust, principal funds have been used frequently for the payment of the taxpayer's Federal income taxes. The total income, deductions and balance in the income account of the trust for the years involved are as follows: 1939
1940
Total income (Line 10, form
1041)
$9,746.86
$9,815.12
Total deductions (Line 14,
form 1041)
1,669.75
1,519.62
Balance (Line 15, form
1041)
$8,077.11
$8,295.50
The trustee made the following distributions: 1939
1940
John Koehrer (taxpayer)
$4,600.93
$6,390.98
Helen K. Andersen
1,700.46
930.48
Mildred K. Knight
1,700.46
1,698.70
$8,001.85
$9,020.16
*297 The respondent, in the notice of deficiency herein, included the following amounts in the taxpayer's income: 1939
$7,927.61
($8,077.11 less $149.50 exempt
interest on obligations of
the United States)
1940
$8,150.16
($8,295.50 less $145.34 exempt
interest on obligations of
the United States)
The fiduciary returns for the calendar years 1939 and 1940 disclose that the trustee paid and deducted from gross income real estate and personal property taxes of the grantor in the total amount of $1,321.62 and $1,248.67 for those respective years. The taxpayer's Federal income tax returns for the calendar years 1939 and 1940 disclosed income tax liability of $4,622.22 and $7,696.74, respectively. The respondent determined a deficiency in income taxes in the amount of $1,106.70 for 1939 and $1,470.01 for 1940. In 1939 the trust paid out of corpus $5,052.20 Federal income taxes of the taxpayer for the calendar year 1938. On October 4, 1935, the taxpayer applied to the Prudential Insurance Company of America for a single premium life insurance policy in the face amount of $50,000. The policy was issued on October 14, 1935 for the sum of $39,296.50, *298 paid by the taxpayer on that date. On October 14, 1935, the Prudential Insurance Company of America issued a "Life Annuity Contract - Non Participating" to the taxpayer for the sum of $13,703.50, which was paid by the taxpayer on the delivery of the policy. Both of these policies were issued without medical examinations. On December 28, 1935, the taxpayer filed application with the Guardian Life Insurance Company of America for an ordinary life single premium insurance policy with amount of $10,000. The policy was issued on December 31, 1935 for the sum of $7,984.70, which amount was paid by the taxpayer on that date. On December 28, 1935, the taxpayer filed an application with the Guardian Life Insurance Company for a single premium annuity policy, which was issued on December 31, 1935 for the sum of $2,515.30, paid by the taxpayer upon delivery of the policy. Both policies were issued without medical examinations. During the taxable years involved the taxpayer received pursuant to the above policies the following amounts: 1939
1940
Prudential Life Insurance Co.
$1,249.80
$1,249.80
Guardian Life Insurance Co.
232.44
232.44
$1,482.24
$1,482.24
*299 The taxpayer reported as income on his return for each of the respective years the amount of $486.56 (3 per cent of $13,703.50 plus $2,515.30). The respondent, in his deficiency notice, included the total sum of $1,482.24 in the taxpayer's income for each of the respective years. Opinion The first issue involves the applicability of sections 166 or 167 of the Internal Revenue Code[1] to the trust instrument dated July 13, 1938 and the amended instrument dated September 9, 1940. The original trust, and as amended, provides that the grantor "irrevocably" assigns to the Union Bank, as trustee, certain property for the uses and purposes specified. No specific power to revest the corpus is reserved. The trustee, however, is authorized in its sole discretion to invade and use corpus for certain purposes directly benefiting the grantor. That title to the corpus was not to be directly revested in the grantor is of no importance. Douglas v. Willcuts, 296 U.S. 1; Estate of William J. Garland, 42 B.T.A. 324; 43 BTA 731. This power existed in the trustee alone. Inasmuch as the trustee was a bank having no interest in the corpus *300 except as trustee, it had no substantial adverse interest. Reinecke v. Smith, 289 U.S. 172; Morton v. Commissioner, 109 Fed. (2d) 47. During the calendar year 1939, this authorization to invade and use corpus was limited to that necessary to pay the grantor's "income taxes". The income of that part of the corpus would thus be taxable to the grantor under section *301 166 (2), supra. However, under each instrument the trustee was first authorized to pay all the grantor's real estate, personal property and "income taxes" out of the income of the trust and to that extent the income would be taxable to the grantor under the provisions of section 167 (2), I.R.C.Hopkins v. Commissioner, 144 Fed. (2d) 683. Assuming "income taxes" as mentioned in the trust meant Federal income taxes, the record still does not disclose the amount of real estate and personal property taxes of the grantor for the year 1939. The fact that the record does reveal that certain real estate and personal property taxes were paid in 1939 does not establish that additional liability for other such taxes did not exist. Nor does it appear that there were, in 1939, no outstanding liabilities for those as well as Federal income taxes for prior years. Under such circumstances, we conclude that petitioner has failed to overcome the presumption of correctness of respondent's determination that the entire income for this trust was taxable to the grantor under section 167 (2), I.R.C., supra. Lewis Hunt Mills, Administrator, 39 B.T.A. 798. As to 1940, *302 under the trust as amended on September 9 of that year, in addition to the power to pay all of the grantor's "income taxes", instead of the provision in the first trust that the trustee could spend $100 per month for defraying the household expenses of the grantor, the trustee was authorized to use as much of the corpus of the trust as was necessary to support and maintain the grantor. Thus, whether or not so used, the whole of the corpus could have been utilized in 1940 for the grantor's benefit. Therefore, the entire income of the trust for that calendar year is taxable to the grantor under section 166 (2), I.R.C., supra. Helvering v. Stuart, 317 U.S. 154. The remaining issue relates to the propriety of the respondent's action in including in the taxable years the total payments received by the taxpayer pursuant to the insurance annuity contracts. Pursuant to section 22 (b) (2) the taxpayer, in the respective years, reported on his Federal income tax returns an amount equal to three per cent of the single premium paid for the respective annuity contracts on the date of their issuance. The respondent, on brief, directs attention to the cases of Helvering v. Meredith, 140 Fed. (2d) 973, *303 and Commissioner v. Meyer, 139 Fed. (2d) 256, affirming Memorandum Opinion of the Board of Tax Appeals, and suggests they are determinative of the issue in the petitioner's favor unless we find them to be distinguishable. We have examined those authorities and conclude they are controlling. On the second issue we sustain the petitioner. Decision will be entered under Rule 50. Footnotes
1. SEC. 166. REVOCABLE TRUSTS. Where at any time the power to revest in the grantor title to any part of the corpus of the trust is vested - * * * * *
(2) in any person not having a substantial adverse interest in the disposition of such part of the corpus or the income therefrom, then the income of such part of the trust shall be included in computing the net income of the grantor. SEC. 167. INCOME FOR BENEFIT OF GRANTOR. (a) Where any part of the income of a trust - * * * * *
(2) may, in the discretion of the grantor or of any person not having a substantial adverse interest in the disposition of such part of the income, be distributed to the grantor; * * * * *
then such part of the income of the trust shall be included in computing the net income of the grantor.↩