E. A. Obering v. Commissioner. Helen Bailey Obering v. Commissioner.
Obering v. Commissioner
Docket Nos. 13526, 13527.
United States Tax Court
1948 Tax Ct. Memo LEXIS 243; 7 T.C.M. (CCH) 84; T.C.M. (RIA) 48027; February 26, 1948
Dickson M. Saunders, Esq., and W. L. Clark, C.P.A., 410 Nat. Bank of Tulsa Bldg., Tulsa, Okla., for the petitioners. Edward C. Adams, Esq., for the respondent. MURDOCK Memorandum Findings of Fact and Opinion *244 The Commissioner determined deficiencies in income tax as follows: Docket
No.
Petitioner
1943
1944
13526
E. A. Obering
$2,838.71
$1,446.02
13527
Helen Bailey Obering
1,190.45
1,582.70 The questions for decision are: (1) whether the 1942 income of an inter vivos trust for the benefit of three minor children should be included in the income of the parent settlors, and (2) whether the petitioners made valid gifts to their infant children of interests in oil and gas leases. Findings of Fact The petitioners are husband and wife. They filed separate individual income tax returns for the years here involved with the collector of internal revenue for the eighth district of Illinois. Those returns were filed on a cash calendar year basis. The petitioners, hereafter referred to as Ernest and Helen, were the parents of three children - Priscilla born May 30, 1929, Joseph born May 11, 1933, and William born August 24, 1935. Each of the petitioners was financially able to supply all of the needs of their children during 1942 and subsequent years. None of the children was in college during 1942. The petitioners, as grantors, and Ernest, as trustee, executed *245 a deed of trust for the benefit of their three children. It was dated July 14, 1942. They assigned oil and gas royalties to the trust and those assignments were recorded in 1942. Sixty-two per cent of those royalties was assigned by Ernest and 38 per cent by Helen. The following are some pertinent provisions of the trust deed: "WHEREAS, first and second parties desire to create a trust for the benefit of their three children, Priscilla Alden Obering, Joseph Bailey Obering, and William Murphy Obering, in order, primarily, to create a fund sufficient to provide each of said children with a college education, the trust property to consist principally, although not exclusively, of oil and gas royalties from time to time placed in the trust by first and second parties; "FIRST: During the trust hereby created the trustee shall collect the income, revenues and profits from the trust property. The trustee shall accumulate the net income remaining after payment or provision for taxes, expenses, and charges for the equal use and benefit of the three children of first and second parties, Priscilla Alden Obering, Joseph Bailey Obering, and William Murphy Obering. * * *
"As each of said *246 children enters college and during the period he or she is pursuing a college education, the trustee shall pay to or apply for such child, out of such child's share of the income, accumulated or current, or both, such amounts as the trustee, in his discretion, shall deem appropriate for the support, maintenance and education of such child. If at any time the income shall not be sufficient to provide the amounts which the trustee deems appropriate for such support, maintenance and education, the trustee may, in his discretion, and from time to time, as often as he may deem necessary, encroach upon the principal of such child's share of the trust estate to obtain the amounts deemed appropriate for such support, maintenance and education. * * *$ "FOURTH: If it shall appear to the satisfaction of the trustee that any beneficiary hereunder shall be in need of support, care or maintenance, at any time during the trust, and without regard to the cause thereof, the trustee may, in his discretion, pay to or apply for the benefit of such beneficiary, during the period such beneficiary is in need of support, care or maintenance, such amounts out of such beneficiary's share of the income, *247 or if the same be insufficient, out of such beneficiary's share of the principal, as the trustee shall deem appropriate for the care, support and maintenance of such beneficiary." The trust realized income of $1,471.69 during 1942. None of that income was distributed or expended for any purpose during 1942. Ernest filed a return for the trust for the period ended December 31, 1942, reporting the income of the trust up to that time. He paid the tax on that income. The Commissioner, in determining the deficiencies for 1943, included 62 per cent of the 1942 trust income in the income of Ernest and 38 per cent thereof in the income of Helen. No consents were filed with the Commissioner as provided in section 134 (b) (2) of the Revenue Act of 1943 and regulations prescribed thereunder. Ernest, Henry Lord, and J. A. MacDonell were all experienced in the oil operating business. They planned to obtain and operate oil and gas leases on 160 acres of land in Illinois which would entitle them to drill four oil wells. This was unproved territory at that time. Ernest, because he lived closer to the leases than MacDonell or Lord, was to be in immediate charge of the operation of the leases, to *248 pay the bills, and to supervise the bookkeeping. Ernest and Helen were each to acquire an undivided one-sixth of the working interests in the leases and it was understood between Ernest and MacDonell that the petitioners were going to assign their interests in these leases to their children. A lease covering 135 acres was first acquired and the petitioners were assigned one-sixth interests therein in March 1943. They executed assigments of their interests in that lease to their children on March 27, 1943. The petitioners subsequently received assignments of interests in the remaining 25 acres and assigned their interests therein to their children on November 30, 1943, February 24, 1944, and April 1, 1944. All of the assignments to the children were duly executed and acknowledged. They were kept separate from other property of the petitioners in a safety deposit box to which the petitioners alone had access. The fact that the assignments had been made was known to the daughter, then 14, to an accountant for the petitioners, and to others. The assignments to the children were not recorded until January 11, 1945. The failure to record was for convenience only. The petitioners made *249 valid completed gifts of their interests in the leases to their children in 1942. Books of account were set up in the office of Ernest at the beginning of the development of the leases showing the fractional interest of each owner of a part of the working interest in the leases. Ernest also maintained a set of books for each of the three children on a calendar year basis. Ernest paid all of the operating expenses of the development of the leases and charged them to the various owners, including the children. He rendered bills to and was reimbursed by the other owners, but he did not bill the children and was not currently reimbursed for advances made on their behalf. He was to recover his advances on their behalf out of their share of the oil proceeds when and if oil was found and sold. The first checks for oil sales from the property were received in May 1944. Thereafter, each owner was credited with his or her share of the income. The children's share of the income was applied first to wipe out the indebtedness to Ernest for advances on their share of the development expenses. The petitioner initiated steps in November 1944 to have Helen appointed legal guardian of the children. *250 He did so upon the advice of his attorney that the arrangement they were following was going to lead to complications. Helen was appointed legal guardian of the children on January 16, 1945. The children's accounts at the end of 1944 showed a credit balance of $7,393.68, which included all income up to the end of November 1944. Ernest drew a check on December 30, 1944 to the order of Helen as guardian for the children for the amount of the above credit balance. Helen opened a bank account with that check on that same day in her name as guardian for the three children. Thereafter she, as guardian, paid the children's share of the expenses and received their share of the income. Helen was discharged as guardian of Priscilla in May 1947 when Priscilla became 18 years of age. The court approved the guardian's account and Priscilla's share thereof was distributed to her. Thereafter, Priscilla received her share of the income directly. The primary motive of the petitioners in making the assignments to their children was to provide for their future security and education. They were also interested in saving income taxes. They never used any portion of the income from the children's *251 interests for any purpose. The Commissioner, in determining the deficiencies for 1944, added $6,521.18 to the income of Ernest and $6,431.45 to the income of Helen with the following explanation: "It is held that the purported assignments of certain leasehold interests in oil producing property to your three minor children are ineffectual for the purpose of taxing the income from such assigned interest to the children. The income therefrom is taxable to you and Mrs. Obering under Section 22 (a) of the Internal Revenue Code." Opinion MURDOCK, Judge: The first issue is whether the Commissioner erred in adding the income of the trust for 1942 to the income of the petitioners. That is material because if he erred, then he also erred in holding that the tax for 1942 was larger than the tax for 1943. Section 167 (c), I.R.C. is not applicable since the trust, the petitioners, and the children were all on a calendar year basis, the period involved ended December 31, 1942, and no consents as described in section 134 (b) (2) of the Revenue Act of 1943 were filed to give (c) retroactive effect. The respondent contends that Ernest, as trustee, *252 had the unrestricted power to use the income and corpus of the trust for the support, care, maintenance, and education of the three minor children and, therefore, the income of the trust was properly included in the income of the grantors under Helvering v. Stuart, 317 U.S. 154. This court had held prior to the decision of the Supreme Court in the Stuart case, supra, that no part of the income of the trust was taxable to the grantor where, as here, no part of the income of the trust was actually used during 1942 to discharge any part of the parental obligation of support owed by these petitioners to their children. E. E. Black, 36 B.T.A. 346; Percy M. Chandler, 41 B.T.A. 165; Frank E. Wolcott, 42 B.T.A. 1151. However, the Supreme Court in the Stuart case took a contrary view and held that where the trustees of a trust for minors without any interest adverse to the grantor have the authority to devote to the "education, support and maintenance" of the minor so much of the net income of the trust as "to them shall seem advisable," that income is taxable to the grantor under 167 because of the possibility of its use to relieve the *253 grantor pro tanto of his parental obligation regardless of whether or not any of it was so used. The Tax Court distinguished that part of the Stuart case in Robert P. Scherer, 3 T.C. 776 on the ground that the trust instruments in the Scherer case empowered the trustee to use the income of the trust for the support, maintenance and education of the minor beneficiaries only where Scherer, the settlor, was unable to provide properly for them, and the testimony showed that at all times he was able to provide amply for his children and that none of the income of the trust has ever been used for such purposes. The present case is fully as strong for the petitioners as was the Scherer case. Here the trust was primarily for the benefit of the children while they were in college and the income was to be used at other times only where it appeared "to the satisfaction of the trustee that any beneficiary hereunder shall be in need of support, care or maintenance." The evidence shows that the children were not in college and their parents were able to provide them with more than they needed in the way of support, care, maintenance and education. Therefore, on authority of the Scherer *254 case, this issue is decided for the petitioners. The other issue for decision is whether the petitioners made valid gifts to their children in 1944 of their interests in oil and gas leases. The respondent's chief attack upon these transfers is summarized in his brief as follows: "Petitioners, at all times here material, were in complete control of the subject matter of the alleged gifts. Any act done by either parent in respect of the realty involved and the income produced therefrom, could be undone, set aside, and held for naught at the whim of the alleged donors, leaving the alleged donees as they were prior to the first steps taken, and with no means of enforcing a contrary result." This point is disposed of by the finding that the transfers were valid and completed gifts in 1944. The evidence shows that they were bona fide in every respect. The respondent places considerable reliance upon the fact that the assignments were not recorded until a later year. But obviously there might have been a valid gift even though the transfers were never recorded. An adequate explanation for the delay in recording was given. There was nothing furtive about the actions of the petitioners *255 in making these assignments, and they never performed any act inconsistent with the assignments. The fact that the assignments had been made was known to all of the persons who might reasonably be expected to know about them. The petitioners could not have undone, set aside, or held for naught the transfers without dishonest and illegal acts upon their part. If the operation had resulted in loss, the petitioners would not have been in position to gain any tax benefits from those losses. Not only has the respondent failed to demonstrate that these transfers were invalid, but the petitioners have made out a case showing that they were effective transfers by gift. Decision will be entered under Rule 50.