J. ADALBERTO ROIG ET AL., Plaintiffs and Appellants, *v.* SECRETARY OF THE TREASURY OF PUERTO RICO, Defendant and Appellee.

Nos. 12071, 12072, and 12073.  Decided December 18, 1961.

---

[5] The result would have been otherwise if the complaint in the district court had been filed by a prosecuting attorney.

*James R. Beverley, R. Castro Fernández* and *Francisco Castro Amy* for appellants. *J. B. Fernández Badillo, Secretary of Justice,* and *J. C. Santiago Matos, Assistant Secretary of Justice,* for appellee.

MR. JUSTICE BLANCO LUGO delivered the opinion of the Court.

By deed No. 105 of August 17, 1933, executed before Notary Francisco González Fagundo, a special agricultural

civil partnership was constituted under the name of Antonio Roig Sucesores, *S. en C.* This family partnership was composed of Eulogia Guzmán widow of Roig, as special partner, and her two children, Antonio Agripino and Jorge Adalberto Roig Guzmán, as managing partners.

In December 1942, Jorge Adalberto Roig donated to his three minor children, Jorge Adalberto, Antonio, and Aileen Mary Roig Ferré, a share of $200,000 in the capital stock belonging to him in the said partnership, also including in the gift the proportional part corresponding to this sum in the undistributed accumulated profits and in the capital reserves. Eulogia Guzmán widow of Roig also donated to each of these donees a share of $50,000 out of the capital stock which she owned in the said partnership.

In May 1946, Jorge Adalberto Roig made an additional gift of $200,000 to each of his said children. On the same date Antonio Agripino donated to each of his grandchildren, Raúl A. Roig, son of his son Antonio Roig, Jr., and Ángeles Cabrer Roig, daughter of his daughter Gladys Roig, a share of $100,000 out of the capital stock belonging to him in the said partnership.

The transfers of capital stock to the minors were credited in the partnership books and to that effect a capital account was opened for each one of them. With the exception of the annual payment of income tax and of the Victory Tax, and in the cases of Raúl A. Roig and Ángeles Cabrer in which a small investment was made for the purchase of shares in the corporation Roig Commercial Bank, it does not appear that any amount was debited to these personal accounts. The corresponding credits of profits as well as some transfers of capital reserves have been made annually.

Jorge Adalberto Roig as well as Antonio Roig, Jr. and Agustín Cabrer, parents with *patria potestas* over the minor donees, waived the legal usufruct granted to them by law in

connection with the property of their unemancipated children.

The Secretary of the Treasury included in the income-tax returns of Jorge Adalberto Roig, Antonio Roig, Jr., and Agustín Cabrer the annual profits credited to their respective children in their capacity as partners of Antonio Roig Sucesores, *S. en C.* The complaint filed in the former Tax Court challenges the correctness of this action of the Secretary. At the opening of the hearing, the attorney for the taxpayers stated that:

"Another question involved is the waiver of the usufruct, whether a parent has the right to waive the usufruct from the property of his minor children. Regarding this question, we have agreed to stipulate the following: That the parents and grandparents donated to their children and grandchildren a certain interest in the capital stock of Antonio Roig Sucesores, and the parents, expressly waived the right of usufruct, the only question for decision being the right or validity of the waiver of usufruct made by the parents in favor of their children. That the parents actually waived the usufruct, and that the Treasurer only questions the father's right to make such waiver. In support of this question on the waiver of usufruct, we have brought a certified copy of the account of all the minors concerned where it appears that the profits distributed corresponding to the minors were credited to the account of each, and there they are with the sole exception that a withdrawal has been made from the account to pay the income tax and other expenses, which also appears from the same evidence.

"Defendant: Correct, that is the stipulation."

From the foregoing statements it follows that the determination of the propriety of the inclusion of the minors' income in the parents' returns depends on whether or not the parents' legal usufruct may be waived or not.[1] Contrary to

---

[1] Thus it was understood by the trial judge who said that "in this case ... the question is submitted barely as one of law, that is, whether or not in Puerto Rico the usufruct from the property of the children granted to the parents by § 155 of the Civil Code may be legally waived." (Tr. Rec. 17.)

the situation in *Serrallés* v. *Sec. of the Treasury, ante* p. 10, genuineness of the motives of the gifts is not questioned nor is there attributed to them the deliberate purpose of distributing the income among the members of a family economic unit in order to reconcile de inflexibility of the progressive tax rates of the additional tax.

### *Waivability of the Parents' Legal Usufruct*

■ In the chapter dealing with the effects of the *patria potestas* with respect to the children's property, the Civil Code of Puerto Rico regulates the administration of the property and the right of usufruct of the parents in specific cases. In general terms, it may be asserted that the exercise of the *patria potestas* confers the administration of the property to the parents—§ 154, 31 L.P.R.A. § 611—except in cases in which the property has been donated to the child for his education and instruction and the donor shall have provided otherwise—§ 157, 31 L.P.R.A. § 614—or where the child, with the consent of the parents, lives independently— § 155, 31 L.P.R.A. § 612. *Blanco* v. *Tax Court*, 72 P.R.R. 799, 808–09 (1951).

■ According to the provisions of §§ 155–57, 31 L.P.R.A. §§ 612–14, the parents possess the usufruct of the property which the unemancipated child may acquire (a) by his labor or industry (*peculium quasi-castrense*); (b) for any valuable consideration (*peculium adventitium*), except in the case of property or income donated or left for the expenses of education and instruction of the child; and (c) with the capital of each of the parents (*peculium profectitium*), in which case they also possess the ownership of the property thus acquired. However, where the parents have been excluded from the inheritance by reason of unworthiness and their children succeed them in their right to the legal portion, the parent excluded shall not enjoy the usufruct nor the administration of the property which in such event his children may inherit, notwithstanding the fact that the acquisition by

the latter is for a valuable consideration, § 690, 31 L.P.R.A. § 2266.[2] It is well to clarify that as respects the usufruct from the property of acknowledged or adopted children § 161, 31 L.P.R.A. § 618, provides that the parents do not acquire it nor shall they have the administration thereof unless they give bond as security for the results of such administration. This provision, which is taken literally from § 166 of the Spanish Civil Code, has been rendered ineffective as respects adoptees by subsequent legislation by Act No. 86 of June 15, 1953 (Sess. Laws, p. 304), which amended § 132, 31 L.P.R.A. § 533, for the purpose of providing that the adoptee shall, *"for all legal purposes,"* be considered as a legitimate child of the adopter and the latter as a legitimate parent of the former.[3]  As correctly stated by Valverde,[4] the purpose of § 166, counterpart of our § 161, is to prevent that the profits be the inducement of the acknowledgment and adoption. In this connection, the Puerto Rican lawmaker has provided for the intervention of a government agency—Public Welfare Division—which makes an investigation of the facts and circumstances surrounding the application for adoption and transmits a report thereon to the court, § 613 of the Code of Civil Procedure, 32 L.P.R.A. § 2692, as amended by Act

---

[2] The Spanish Civil Code contains an identical provision—§ 857—in the event of disinheritance: "The children of the person disinherited shall take his or her place and shall preserve the rights of forced heirs with respect to the legitime, but the disinherited parent shall not have the usufruct or the administration of the property of which it consists." For some unexplained reason, this section was eliminated after § 781, 31 L.P.R.A. § 2459, and to this Muñoz Morales refers in III *Anotaciones al Código Civil de Puerto Rico* 250 (1939), as an undue mutilation in one of its most important provisions, and advances that "this error is not cured by the subsistence of § 689... nor by that of § 892."

[3] Act No. 17 of August 20, 1952 (Sp. Sess. Laws, p. 200), provides that all children have, with respect to their parents and to the estate left by the latter, *the same rights* that correspond to legitimate children. As may be seen, there is a difference in the language of Act No. 86 of 1953, *supra*, with respect to the adoptees. If the same solution with respect to adoptees applies to the situation of acknowledged children, *quaere.*

[4] IV *Tratado de Derecho Civil Español* 505 (4th ed. 1938).

No. 85 of June 15, 1953 (Sess. Laws, p. 298)., and which to a certain extent tends to prevent the danger pointed out above.

Sections 155–57 *supra* were copied literally from the corresponding § § 160–62 of the Spanish Civil Code. Among the nations of Iberian origin, Panamá [5] and Cuba [6] have identical provisions. Uruguay,[7] Colombia,[8] Mexico,[9] Perú,[10], Bolivia,[11] El Salvador,[12] Argentina,[13] Venezuela,[14] and Chile [15] also adopted similar provisions, but they conform the inflexibility of the Spanish legislation and establish the "professional or industrial" peculium, which is the peculium which refers to the property acquired by the child by his industry or labor and confers to the children the ownership as well as the usufruct. In Uruguay and Argentina the property acquired by the children "fortuitously", such as game, bets, invention, or finding, is excluded from the right of usufruct of the parents. Property bequeathed or donated to the minor children for a specific purpose, even if it is not for the expenses or education and instruction, is excluded in

---

[5] Sections 193-95 of the Civil Code of Panamá of 1926, p. 56 (*Imprenta Nacional* ed.).

[6] Sections 160-62 of the Civil Code of Cuba, pp. 124–26 (Eduardo Rafael Núñez ed., 1940).

[7] Section 266 of the Civil Code of Uruguay, Vol. I, p. 363 (ed. by Faculty of Law and Social Sciences of the University of Montevideo, 1949).

[8] Section 291 of the Civil Code of Colombia, p. 135 (*Editorial Temis*, 1955).

[9] Section 429 of the Civil Code of Mexico, p. 148 (Andrade editions, 1952).

[10] Section 401 of the Civil Code of Perú, p. 129 (*Librería Mejía Baca*, 1955).

[11] Section 193 of the Civil Code of Bolivia, p. 54 (*Instituto de Cultura Hispánica*, ed. 1959).

[12] Section 255 of the Civil Code of El Salvador, p. 77 (*Instituto de Cultura Hispánica* ed., 1959).

[13] Section 287 of the Civil Code of Argentina, p. 77 (*La Facultad* ed., 1933).

[14] Section 273 of the Civil Code of Venezuela, p. 75 (*Imprenta Nacional* ed).

[15] Section 243 of the Civil Code of Chile, p. 96 (*Instituto de Cultura Hispánica* ed., 1961).

Perú (§ 401), Argentina (§ 289), and Mexico (§ 430) from the usufruct of the property of their children granted to the parents.

In California the father has the right only to the property which the child may acquire by his industry or labor (§ 197 of the Civil Code, Deering's Civil Code of California 77), but the latter retains the absolute ownership of other property which he may acquire by any title, 37 Cal. Jur. 2d, *Parent and Child*, § § 45 and 58, pp. 199 and 224. Louisiana, following the pattern of the Napoleonic legislation, grants the usufruct to the parents until the majority of the children, and specifically makes it their duty, as an obligation resulting from this enjoyment, to nourish, maintain, and educate the children according to their station in life. As in the majority of the Spanish-American countries, the usufruct does not extend to the property acquired by the child by his own labor or industry, nor to those that are given or left him under the express condition that the parents shall not enjoy such usufruct. Sections 223–26, 2 West, Louisiana Civil Code 173–83; Dowling, *Parents Usufruct of Child's Estate During Marriage*, 20 Tul L. Rev. 63 (1945).

There is a striking division among civil-law commentators on the nonwaivability of the usufruct from the children's property which the law grants to the parents. Those who hold that it can not be waived allege as grounds (a) that this usufruct is inherent in the *patria potestas* and in its functions of recognized public interest; (b) that it is the direct result of the exercise of the parents' duty to assist and protect their children, and it therefore represents a compensation for the benefits afforded to the children for their maintenance and development; (c) that it has not been established for the father's exclusive benefit, but for the family under his control to help him bear the burdens cosubstantial with the exercise of the *patria potestas;* (d) that this usufruct does not have strictly the concept of a pecuniary right;

(e) that since it is an inalienable right, the immediate consequence is that it can not be waived because the waiver is a form of alienation; (f) that since the administration can not be waived, neither should the usufruct be waived because of the close nexus between them; (g) that although the Code does not expressly provide it, it is so confirmed by subsequent legislation—§ 108 of the Mortgage Law, which provides that this usufruct can not be mortgaged; (h) that it has been thus recognized by Judgments of the Supreme Court of Spain, citing those of October 22, 1891 (70 *Jur. Civ.* 248); July 7, 1892 (72 *Jur. Civ.* 25); and, with special emphasis, that of September 27, 1893 (74 *Jur. Civ.* 130). V-2 Castán Tobeñas, *Derecho Civil Español, Común y Foral* 162–63 (1958 ed.); II Manresa, *Comentarios al Código Civil Español* 49–57 (1957 ed.); II-2 Puig Peña, *Tratado de Derecho Civil Español* 175–77 (1951 ed.); IV Valverde, *Tratado de Derecho Civil Español* 501–05 (1938 ed.); Castán Vázquez, *La Patria Potestad* 297–99 (1960 ed.); IV Bonet Ramón, *Compendio de Derecho Civil* 627–29 (1960 ed.); IV Borrell y Soler, *Derecho Civil Español* 169–74 (1954 ed.); I Santamaría, *Comentarios al Código Civil* 227–29 (1938 ed.); *cf.* II-1 Colin y Capitant, *Curso Elemental de Derecho Civil* 80 (transl. by Demófilo de Buen, 1942 ed.); I-2 Josserand, *Derecho Civil* 281–85 (transl. by Santiago Cunchillas, 1950 ed.); Machado, *Comentarios al Código Civil* (of Cuba) 109. See, also, *La prohibición de enajenar bienes dejados en nuda propiedad a los hijos menores,* 26 *Revista Crítica de Derecho Inmobiliario* 872–73 (1953); *Usufructo de la Patria Potestad,* 150 *Revista General de Legislación y Jurisprudencia* 133–37 (1927). A similar criterion is contained in the Uruguayan legislation. It has been said there that the principle underlying this usufruct law is the capacity of the parent to perform his obligations, or as compensation for the investment of his own property in taking care of those obligations. (See footnote on § 266 *supra* of the Annotated Civil Code of Uruguay).

The cornerstone of the commentators who favor the waivable character of the paternal usufruct is that, unlike the administration, it does not partake of the nature of a public-policy provision, for it is granted to the parent "as compensation for the expenses and penalty which the education and administration entail, as well as to prevent the dangers of the rendering of accounts, in which the good name of the parent may be blemished." II De Diego, *Instituciones de Derecho Civil Español* 671 (1959 ed.). Oyuelos, in his I *Digesto* 267, draws a line between the right of usufruct of the parent and the right of the tutor to the fruits by way of pension, meaning that this use and enjoyment stems from the release from the rendition of accounts. See Gregorio Ortega, *La Hipoteca del Usufructo y su Extinción*, 30 *Revista de Derecho Privado* 827–29. There are those who maintain that the paternal estate is actually increased with the fruits of the child's peculium which exceed the latter's expenses,[16] and that in this sense it is like any other conventional right of usufruct, and that it can therefore be waived. I Planiol y Ripert, *Tratado Práctico de Derecho Civil Francés* 369–70 (1927 ed.). It is well to add that some legislations *expressly* permit the waiver of the usufruct: Germany—§ 1662; see IV-2 Kipp & Wolff, *Tratado de Derecho Civil* 94 (1952 ed.) ; Mexico— § 431, which requires that the waiver be stated in writing or in some other indubitable way; Perú—§ 405, which expressly prohibits the "transfer" of the right, but admits the waiver thereof at any time.

In passing upon the propriety of an action for damages brought by a child for the negligent action of his father, this Court in *Guerra* v. *Ortiz*, 71 P.R.R. 574, 580 (1950), *aff'd,*

---

[16] *Blanco* v. *Tax Court*, 72 P.R.R. 799-808 (1951), seems to subscribe to this position when in referring to the special character of the usufruct of the parents it says, "We find nothing in our Civil Code to the effect that after the usufruct of the petitioner is terminated it is her duty to render accounts to her daughters as to the fruits that might remain after deducting the corresponding expenses of support, care, and education of her daughters..."

187 F.2d 496 (1951), discussed as one of the possible factors adverse to such claim the nonwaivable character of the right of legal usufruct granted to the parents. In this connection, it was said:

"There is another factor of great importance which we must consider in deciding the question raised. That is, that under § 155 of the Civil Code, *supra,* although the property acquired by an unemancipated child, belongs to him, '... the usufruct thereof belongs to the parents having *potestas* over him whilst in their company...', the parents having, in addition, according to § 154, *supra,* the administration of said property. An abnormal situation, not to say immoral, would thus arise, therefore, where the father would become the administrator and usufructuary of that which, due to his negligent action, his son obtained. It could be argued that such rights of administration and legal usufruct granted to parents could be waived by them. The commentators of the Spanish Civil Code maintain the opposite."

Yet, six years later, we left the question open for further consideration in *Alvarez v. Sec. of the Treasury,* 80 P.R.R. 15, 25 (1957) (on reconsideration), in stating that "we note finally that in this case we need not pass on the question of whether a father with *patria potestas* may ever waive or alienate the usufruct of property belonging to his minor children."[17] *Hernández v. Tax Court,* 73 P.R.R. 659 (1952), sheds no light on the problem because, although it deals with the taxation of rents produced by property of minor children, the usufruct of which belonged to the mother, the case did not involve the waiver of the usufruct of the parents.

■ ■ After a careful analysis of the problem, we believe that the best solution is that which announces that the parent

---

[17] In the original opinion rendered in said case of *Alvarez,* 78 P.R.R. 395 (1955), it was said that "neither the management of the property of such child, *nor the alienation of the usufruct* constituted thereon, may be waived or alienated as a matter of public law, it not being possible therefore to relieve a parent, by the creation of a trust, from such paternal obligations." The concurring opinion holds the same view in 80 P.R.R. 33 (1957).

can not waive the administration, but that he can waive the usufruct granted to him by law from the property of his children whenever such waiver is made in favor of the child himself and does not involve an alienation in favor of a third party. *Cf. Suárez* v. *Registrar*, 35 P.R.R. 466 (1926). In view of the reasons stated, it is clear that such waiver not only does not prejudice the minor child, but is beneficial to him, and, therefore, the principle that the usufruct is constituted for the minor's protection is not impaired. The immediate effect of the waiver is to deprive the parent of the free disposition, without rendition of accounts, of the fruits, products, and profits which the property may yield, which would thus increase the peculium—etymologically, small patrimony—of the child. It can not be argued that the obligation to support the child would be neglected because, as respects the parent, such obligation is imposed by law regardless of whether the child owns property, and, as respects the child, because he would always have available for his needs the accrued fruits and even the capital itself, if it were necessary. On the other hand, it would be an inexplicable anomaly to insist that the right of usufruct can not be waived because the latter is inherent in the exercise of the *patria potestas*, considering that the Code recognizes situations in which the parent may be deprived not only of the usufruct but also of the administration itself by reason of his own acts (§ 166 of the Civil Code), or by the will of a third party who may entrust such commission to a stranger (§ 157). It is well to clarify that we are not convinced by the other ground adduced to the effect that this usufruct represents compensation recognized to the father for the burdens resulting from the exercise of the *patria potestas*, since this would tend to undermine this institution which is the basis of every family unit by attributing characteristics of pecuniary law, when the obligations created, because they are of a highly moral character, can not and should not be compensated with

money. Precisely we hold that the administration can not be waived, because we rely on the undisputed principle that no one looks after the interests of the offspring with more zeal and discretion than the father himself who begot it.

■■ The assertion that if the usufruct can not be alienated it can not be waived either is not convincing, since the practical result of the alienation and encumbrance of the minors' property, which is not forbidden to the parents but limited by the court's intervention in order to ascertain ·the necessity, usefulness, and convenience of the transaction proposed, is the alienability of the father's right of enjoyment of the property alienated or encumbered.

It is also clear that the waiver which we admit does not sever completely the parents from the children's property, since in order to dispose of or use the capital or the fruits yielded it is necessary for him to intervene for the purpose of seeking and obtaining the corresponding judicial authorization, § 159, 31 L.P.R.A. § 616. Naturally, one of the consequences of the waiver of the legal usufruct by the parent who retains the administration of the property of his minor children is that he will be bound not only to make the corresponding inventory (§ 158 of the Civil Code, 31 L.P.R.A. § 615), but also to render accounts of his actions. This is so because any balance remaining after paying the expenses of administration becomes a part of the child's capital, which may not be used except in the manner provided by law. It is to be noted that when the parent-donor utilizes the fruits and profits yielded by the property donated to defray the expenses of support and education of the children-donees, these amounts should be included in his income, inasmuch as they have served the purpose of complying with the obligation imposed on him by law. *Serrallés v. Sec. of the Treasury, ante,* p. 10, cf. *Álvarez v. Sec. of the Treasury,* 80 P.R.R. 15 (1957) ; *Helvering v. Stuart,* 317 U.S. 154 (1942) ; *Helvering v. Clifford,* 309 U.S. 331 (1940).

154

Since these cases were submitted for decision on the basis of the determination on the waivability of the parents' usufruct from the property of the children, and in view of the conclusion reached in that respect, the judgments rendered by the Superior Court, San Juan Part, on March 9, 1955, will be reversed.

Mr. Justice Belaval dissented. Mr. Justice Santana Becerra and Mr. Justice Serrano Geyls did not participate herein.